**202**

60 CCPA

**AIMCEE WHOLESALE CORP., W. J. Byrnes & Co., N. Y., Inc., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5464.**

United States Court of Customs and Patent Appeals.

Oct. 26, 1972.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellants; J. Bradley Colburn, E. Thomas Honey, David O. Elliott, New York City, of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the United States.

Lamb & Lerch, New York City, amicus curiae; David A. Golden, Richard J. Kaplan, New York City, of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision and judgment of the United States Customs Court,[1] overruling a protest concerning

---

1. 324 F.Supp. 514, 66 Cust.Ct. 155, C.D. 4186 (1971).

the rate of duty imposed on certain bicycles imported from England. The bicycles were assessed under paragraph 371 of the Tariff Act of 1930, as modified by Presidential Proclamation 3394.[2] Appellants contend that Proclamation 3394, which raised the effective rate of duty from 7½ percent to 11¼ percent ad valorem, is invalid for reasons which will appear below. The Customs Court upheld the proclamation in a well-reasoned opinion. We affirm the decision and judgment of the Customs Court.

Presidential Proclamation 3394 reads in pertinent part as follows:

1. Whereas, pursuant to the authority vested in him by the Constitution and the statutes, including section 350 of the Tariff Act of 1930, as amended (19 U.S.C. 1351), the President, on October 30, 1947, entered into a trade agreement with certain foreign countries, which consists of the General Agreement on Tariffs and Trade, including a schedule of United States concessions * * *, and by Proclamation No. 2761 A of December 16, 1947 (61 Stat. (pt. 2) 1103), proclaimed such modifications of existing duties * * * as were then found to be required or appropriate to carry out such trade agreement * * *;

2. Whereas, United States tariff concessions on bicycles provided for in paragraph 371 of the Tariff Act of 1930 were included in such trade agreement, such concessions * * *, being * * * as follows: [setting forth old rate of duty claimed herein by appellants] * * *

3. Whereas Article XXVIII of the said General Agreement on Tariffs and Trade (8 UST (pt. 2) 1790) provides that a contracting party may, pursuant to procedures provided for therein, modify or withdraw concessions in its schedules to that agreement;

4. Whereas due notice of intention to enter into negotiations under the said Article XXVIII with a view to the modification or withdrawal of the concessions represented by item 371 [first] in Part I of Schedule XX–1947 was given, and the views presented by interested persons were received and considered, and information and advice with respect to such negotiations were sought from the Departments of State, Agriculture, Commerce, and Defense and from other sources, and an investigation and report to the President under the provisions of section 3 of the Trade Agreements Extension Act of 1951, as amended (19 U.S.C. 1360), have been made by the United States Tariff Commission with respect to the products involved in such negotiations;

5. Whereas, agreement for the modification of the said concessions in the manner set forth below in this recital having been reached pursuant to Article XXVIII of the said General Agreement, I determine that it is required or appropriate in order to carry out the agreement specified in the first recital hereof that Part I of Schedule XX–1947 be applied as though the said item 371 [first] and the appropriate headings read as follows: [setting forth new rate of duty as assessed in the present case] * * *

6. Whereas a proclaiming of the application of Part I of Schedule XX–1947 as set forth in the fifth recital of this proclamation would supersede Proclamation No. 3108 of August 18, 1955 (70 Stat. C 4), relating to such concessions;

*       *       *       *       *       *

Now, therefore, I, John F. Kennedy, President of the United States of America, acting under the authority of the Constitution and statutes, including the said section 350 of the

2. 75 Stat. 1028, T.D. 55328 (1961).

Tariff Act of 1930, as amended, do proclaim as follows:

## Part I

To the end that the trade agreements referred to in the foregoing recitals may be carried out:

\* \* \* \* \* \*

(b) Effective at the opening of the Customs House, at the respective ports of entry, on the second day following the date hereof, Part I in Schedule XX–1947 shall be applied as though item 371 [first] therein read as set forth in the fifth recital of this proclamation;

Section 350 of the Tariff Act of 1930, as amended (19 U.S.C. § 1351), upon which the President relied for authority, provides in pertinent part:

(a)(1) For the purpose of expanding foreign markets for the products of the United States (as a means of assisting in establishing and maintaining a better relationship among various branches of American agriculture, industry, mining, and commerce) by regulating the admission of foreign goods into the United States in accordance with the characteristics and needs of various branches of American production so that foreign markets will be made available to those branches of American production which require and are capable of developing such outlets by affording corresponding market opportunities for foreign products in the United States, the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

(A) To enter into foreign trade agreements with foreign governments or instrumentalities thereof:

\* \* \*

(B) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder.

\* \* \* \* \* \*

Section 3 of the Trade Agreements Extension Act of 1951 (19 U.S.C. § 1360), referred to in the fourth paragraph of Proclamation 3394, reads in pertinent part as follows:

(a) Before entering into negotiations concerning any proposed foreign trade agreement under section 1351 of this title, the President shall furnish the United States Tariff Commission \* \* \* with a list of all articles imported into the United States to be considered for possible modification of duties and other import restrictions, imposition of additional import restrictions, or continuance of existing customs or excise treatment. Upon receipt of such list the Commission shall make an investigation and report to the President the findings of the Commission with respect to each such article as to (1) the limit to which such modification, imposition, or continuance may be extended in order to carry out the purpose of said section without causing or threatening serious injury to the domestic industry producing like or directly competitive articles; and (2) if increases in duties or additional import restrictions are required to avoid serious injury to the domestic industry producing like or directly competitive articles the minimum increases in duties or additional import restrictions required. Such report shall be made by the Commission to the President not later than six months after the receipt of such list by the Commission. No such

foreign trade agreement shall be entered into until the Commission has made its report to the President or until the expiration of the six-month period.

(b)(1) * * * If in the course of any such investigation the Commission shall find with respect to any article on the list upon which a tariff concession has been granted that an increase in duty or additional import restriction is required to avoid serious injury to the domestic industry producing like or directly competitive articles, the Commission shall promptly institute an investigation with respect to that article pursuant to section 1364 of this title.

Section 7 of the Act, as amended (19 U. S.C. § 1364), specifies the procedures and requirements governing the operation of escape-clause actions.

As a historical note, it is clear from the record that Proclamation 3394 resulted from negotiations designed to reinstate the rate for these bicycles which was proclaimed in Presidential Proclamation 3108,[3] which was held invalid by this court in United States v. Schmidt, Pritchard & Co., 47 CCPA 152, C.A.D. 750 (1960).

■ Appellants' brief contains statements which could be interpreted as a reassertion of an argument made below that the President circumvented the "sense of Congress" embodied in the Trade Agreements Extension Act of 1958. The Customs Court characterized that contention as being "that the effect of section 4(b) [of the 1958 Act] was to 'eliminate for all practical purposes' the President's authority to negotiate the instant *increases* in duty by a trade agreement."[4] That argument was effectively dealt with in the opinion below, with which we fully agree. Appellants go on to state:

The difficulty with the lower Court's holding on this point is that, having decided that the President had authority to negotiate the duty increases on bicycles, it failed to adequately deal with the fact that he did not follow the amended procedures set forth in section 3(b) of the Trade Agreements Extension Act of 1951 (section 4(b) of the TAEA of 1958). Whether or not this Court agrees with appellants that the President acted contrary to the sense of Congress, as contained in the statute and legislative history, it must recognize that in his haste to effectuate the rates proclaimed in Proclamation 3108, * * * the President violated the express requirements of said amended section 3(b).

Appellants then analyze the legislative history of sections 3(b) and 7 as amended, and argue that it establishes the commencement of an escape-clause investigation as a "procedural [prerequisite] to the negotiation of any trade agreement attempting to effect an increase in duty rates on concession-granted articles."

■ We are convinced that the only "procedural prerequisites" to negotiation by the President are those found in the following provisions of section 3(a) of the Act:

No such foreign trade agreement shall be entered into until the Commission has made its report to the President *or* until the expiration of the six-month period. [Emphasis added.]

There is nothing in the wording of the statute which would indicate that the commencement or the completion of an escape-clause investigation is necessary before the President can negotiate an agreement under section 350 of the 1930 Act. The legislative history of the 1958 amendments to section 3(b) of the Act indicates that the President may still ne-

---

3. 70 Stat. c. 4, T.D. 53883 (1955).

4. 324 F.Supp. at 527, 66 Cust.Ct. at 170 (emphasis added). Section 4(b) of the

1958 Act added the sentence quoted above as section 3(b)(1) to section 3 of the Trade Agreements Extension Act of 1951.

gotiate duty increases *even though* an escape-clause investigation has been started.[5] Moreover, as pointed out by appellee, although the Trade Agreements Extension Act of 1958 changed the time period in the above-quoted provision from 120 days to six months, it did nothing about the fact that the President could negotiate an agreement after the expiration of that period even if he never received the Commission's report.[6] Thus the statute authorizes negotiations at a time when the Commission may not yet have determined that a duty increase was called for. In sum, appellants' argument that commencement of an escape-clause investigation was a prerequisite to negotiation is without merit.

■ Appellants also contend that Proclamation 3394 is invalid because of the failure to declare the finding of fact required by section 350(a):

\* \* \* the President, whenever he finds as a fact that any existing duties or other import restrictions \* \* \* are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized \* \* \*.

The Customs Court pointed out that there is no requirement that the President *recite* that he made the finding. The court considered that it may be presumed in this case that the President made the requisite finding of fact and properly exercised his authority under section 350.

The authorities relied on by appellants emphasize the importance of the finding of fact and clearly establish it as absolutely necessary in order for the President to be vested with authority under section 350. See H.R.Rep.No.1761, 85th Cong., 2d Sess. 71 (1958); Star-Kist Foods, Inc. v. United States, 275 F.2d 472, 47 CCPA 52, C.A.D. 728 (1959). However, we have been unable to find any authority which stands for the proposition that proclamations made pursuant to section 350 would be invalid unless the President recited that he had made the necessary finding of fact. We see no reason to read such a requirement into the statute, and thus are in agreement with the Customs Court.

Affirmed.

5. See H.R.Rep.No.1761, 85th Cong., 2d Sess. 7 (1958), discussing section 4(b) of the 1958 Act:

Under this new provision, whenever a majority of Tariff Commissioners, or half the Tariff Commissioners and the President, agree on a peril point calling for increased tariff restrictions, an escape-clause investigation shall be instituted automatically. This assures that there may be no loss of time in proceeding toward a determination on a basis which will, if necessary, permit action by the United States. Although *the President may still negotiate the indicated increases*, together with compensatory adjustments, the possibility of escape-clause action, which international agreements permit without prior concurrence, will thus be assured, if needed, in the event agreement with another country on the increase proves impracticable. [Emphasis added.]

Although appellants contend that "indicated increases" referred to increases indicated as a result of an escape-clause investigation, when the above language is placed in context it is clear that increases arrived at prior to the escape-clause investigation were what was being referred to.

6. See S.Rep.No.299, 82nd Cong., 1st Sess. (1951), [1951] 2 U.S.Code Cong. & Admin.Service p. 1466.