The **FLORSHEIM SHOE COMPANY, DIVISION OF INTERCO, INC., Plaintiff,**

v.

The **UNITED STATES, Defendant.**

**Court No. 82–4–00484.**

United States Court of International Trade.

July 7, 1983.

Baker & McKenzie, Washington, D.C. (William D. Outman, II and Munford Page Hall, II, Washington, D.C., of counsel), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Commercial Litigation Branch and Michael P. Maxwell, New York City, for defendant.

## ON DEFENDANT'S MOTION TO DISMISS

NEWMAN, Judge.

### Introduction

This case presents several questions arising out of Presidential action taken under the Generalized System of Preferences ("GSP"), a vitally important internation

trade program. By Title V of the Trade Act of 1974 (88 Stat. 2066–2071, Pub.L. 93–618, 19 U.S.C. § 2461 *et seq.*) Congress created the GSP which authorizes the President to provide duty-free treatment for any eligible article imported from any beneficiary developing country for the purpose of furthering the economic development of such country. Section 501 of the Trade Act of 1974 (19 U.S.C. § 2461).[1] In this connection, India has been designated by the President as a beneficiary developing country for purposes of Title V of the Trade Act of 1974 (see section 502 (19 U.S.C. § 2462)). It should also be mentioned at this juncture that under section 504 (19 U.S.C. § 2464)—the centerpiece of this litigation—the President may, or under certain circumstances must, deny duty-free treatment under the GSP.

*Background*

On January 24, 1977, the President placed buffalo leather on the list of articles eligible for duty-free treatment under the GSP (Executive Order No. 11960, 42 FR 4317). Shortly thereafter, on February 28, 1977, buffalo leather imported from India was excluded from duty-free treatment (Executive Order No. 11974, 42 FR 11230A). On March 28, 1980, goat and kid leather, not fancy, were added to the list of GSP eligible articles, but imports of such articles from India were excluded from duty-free entry by Executive Order No. 12204, 45 FR 20740. The latter Order also continued the denial of duty-free treatment for imports of buffalo leather from India. Finally, by Executive Order No. 12302 of April 2, 1981 (46 FR 19901), the President continued the denial of duty-free treatment for imports of buffalo leather and goat and kid leather, not fancy, from India.

Florsheim, a domestic manufacturer of footwear, imports buffalo leather and goat and kid leather, not fancy, from India for use in its products. In 1979, Florsheim filed a petition with the United States Trade Representative ("USTR") requesting a separate category in the Tariff Schedules of the United States ("TSUS") for water buffalo leather, and asking for the duty-free treatment of such leather from India under the GSP as allegedly no like or directly competitive article was produced in the United States on January 3, 1975, the effective date of the Trade Act of 1974. By letter dated July 11, 1980, the USTR denied the petition since the USTR had determined that an article directly competitive with water buffalo leather was produced in the United States as of January 3, 1975.[2]

In 1980, Florsheim filed another petition with the USTR requesting duty-free treatment for water buffalo leather and also for goat and kid leather, not fancy, as allegedly no like or directly competitive article was produced in the United States on January 3, 1975. The second petition was denied on June 11, 1981 because the USTR found that there was domestic production of goat and kid leather, and that water buffalo leather, while not produced domestically, is directly competitive with calf leather.

Having been unsuccessful in its petitions at the administrative level to obtain duty-free treatment under the GSP for water buffalo leather and for goat and kid leather, not fancy, Florsheim commenced this action on April 19, 1982 (covering 122 entries) to review the denial of its protests by the United States Customs Service against the classification of buffalo leather and goat and kid leather, not fancy, imported from India as dutiable merchandise under items 121.55 and 121.62, TSUS. Plaintiff claims that the subject merchandise should have been classified as duty-free under items A121.55 and A121.62, TSUS.

There is no dispute that this Court has subject matter jurisdiction under 28 U.S.C. § 1581(a).

1. Hereinafter, all cited section numbers refer to Title V of the Trade Act of 1974. See also Headnote 3(c) of the General Headnotes and Rules of Interpretation, Tariff Schedules of the United States.

2. See 15 CFR Part 2007 *et seq.*

It is evident from the complaint that plaintiff's grievance lies in the President's Executive Orders denying the subject merchandise duty-free treatment under the GSP. The gravamen of the complaint is that the President's action was predicated upon section 504(c)(1)(B) (19 U.S.C. § 2464(c)(1)(B)), which in essence requires the President to deny duty-free treatment for GSP eligible articles imported from a beneficiary developing country if more than 50 percent of the appraised value of the total United States imports of such article during any calendar year are exported from that country. The President must deny duty-free treatment respecting imported articles which meet this "competitive need formula", unless he makes certain additional findings specified by the statute. However, the competitive need limitation specified in section 504(c)(1)(B) "does not apply" to imported articles if "no like or directly competitive article" was produced in the United States on January 3, 1975. Section 504(d).

In substance, plaintiff alleges that the President's action was *ultra vires* in denying duty-free treatment to the subject merchandise under the competitive need formula on the ground that the USTR erroneously determined under section 504(d) (based upon alleged faulty fact-finding by the ITC) that articles like or directly competitive with the importations were produced in the United States on January 3, 1975. Plaintiff contends, therefore, that in taking action under section 504(c)(1)(B) the President failed to comply with section 504(d), and hence Customs incorrectly classified the imported buffalo leather and the goat and kid leather as dutiable articles under items 121.55 and 121.62, TSUS. As previously mentioned, plaintiff seeks to have the entries reliquidated duty-free under items A121.55 and A121.62, TSUS.

Presently before us is defendant's motion pursuant to Rule 12(b)(5) of this Court's rules to dismiss the action for failure to state a claim upon which relief can be granted. Defendant's motion is based upon three grounds:

(1) Florsheim lacks standing to seek review of the Presidential action challenged by the complaint;

(2) The President acted within his delegated authority under section 504 in denying duty-free treatment to the merchandise in question; and

(3) The President's action was not subject to judicial review, except to insure conformity with the President's delegated authority and compliance with the procedural prerequisites to taking action.

*Standing*

Defendant's contention that plaintiff lacks standing to bring this action may be quickly disposed of. On this aspect of the case, defendant posits that Florsheim's claim is based on sections 504(c)(1)(B) and 504(d), and that Florsheim is not within the "zone of interests" protected by those provisions. On that score, defendant insists that only domestic companies which produce goods competitive with the imported articles are protected by sections 504(c)(1)(B) and 504(d), and hence only such domestic companies that seek to compel the President to withdraw duty-free treatment under the competitive need formula (section 504(c)(1)(B)) could conceivably have standing to bring an action.[3] Defendant further relies upon the broad delegation of authority to the President under section 504(a) to withdraw, suspend, or limit duty-free treatment under the GSP as indicative that "Congress does not intend to protect entities aggrieved by loss of duty-free treatment" (Defendant's memorandum, at 10).

In support of its standing to bring the instant action, plaintiff relies primarily upon 28 U.S.C. § 2631(a), which reads:

§ 2631. *Persons entitled to commence a civil action*

(a) A civil action contesting the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 may

---

**3.** Defendant, however, does not concede that even domestic companies are entitled to judicial review of the President's action under section 504.

be commenced in the Court of International Trade by the person who filed the protest pursuant to section 514 of such Act, or by a surety on the transaction which is the subject of the protest.

I have concluded that plaintiff, the importer and ultimate consignee of the goods in question, whose protests against the duty assessments on the importations were denied by Customs under section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515), has statutory standing to contest such denial under section 2631(a). Clearly, Florsheim has standing to claim entitlement to duty-free treatment of its importations under the GSP and challenge the classification and assessment of duties by Customs.

The instant case is readily distinguishable from *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), relied upon by defendant, wherein *consumers* sought to bring an action for alleged violations of the Lanham Act grounded on false descriptions or representations, and the Court, not surprisingly, determined that the statute conferred standing only on commercial entities.

The short of the matter is that I disagree with defendant's contention that the "zone of interests" test bars this plaintiff from seeking judicial review of the claim that its imported merchandise was erroneously assessed with duties. Accordingly, defendant's motion to dismiss on the ground that plaintiff lacks standing in this action is denied.

*President's Authority Under Section 504*

■ We reach plaintiff's contention that the President's action in this case was *ultra vires.*

The gist of Florsheim's complaint is that the President improperly denied duty-free treatment to the subject merchandise under the competitive need formula of section 504(c)(1)(B) because the USTR erred in his determination under section 504(d) that ar-

ticles like or directly competitive with the imported merchandise were produced in the United States on January 3, 1975.[4] Thus, according to plaintiff, by an erroneous determination under section 504(d) the President acted illegally under section 504(c)(1)(B). Defendant, however, stresses the President's broad discretionary authority to deny the application of duty-free treatment under section 504(a), which we now address.

The pertinent statutory provisions read:
§ 2464. *Limitation on preferential treatment*
(a) *Withdrawal, suspension, or limitation of duty-free treatment.* The President may withdraw, suspend, or limit the application of the duty-free treatment accorded under section 501 [19 USC § 2461] with respect to any article or with respect to any country; except that no rate of duty may be established in respect of any article pursuant to this section other than the rate which would apply but for this title [19 USC §§ 2461 et seq.; amendment to 19 USC § 1202]. In taking any action under this subsection, the President shall consider the factors set forth in sections 501 and 502(c) [19 USC §§ 2461 and 2462(c)].

\* \* \* \* \* \*

(c) *Designation, continuance of designation, or redesignation as beneficiary developing country notwithstanding increases in exports to United States.* (1) Whenever the President determines that any country—

\* \* \* \* \* \*

(B) except as provided in subsection (d), has exported (either directly or indirectly) to the United States a quantity of any eligible article equal to or exceeding 50 percent of the appraised value of the total imports of such article into the United States during any calendar year,

then, not later than 60 days after the close of such calendar year, such country

---

4. The USTR was delegated authority by the President for the administration of the GSP.

Executive Order No. 11846, 40 FR 14294A (1975).

shall not be treated as a beneficiary developing country with respect to such article, except that, if before such 60th day, the President determines and publishes in the Federal Register that, with respect to such country—

(i) there has been an historical preferential trade relationship between the United States and such country,

(ii) there is a treaty or trade agreement in force covering economic relations between such country and the United States, and

(iii) such country does not discriminate against, or impose unjustifiable or unreasonable barriers to, United States Commerce,

then he may designate, or continue the designation of, such country as a beneficiary developing country with respect to such article.

\*    \*    \*    \*    \*    \*

(d) *Domestic non-production of like or directly competitive articles.* Subsection (c)(1)(B) does not apply with respect to any eligible article if a like or directly competitive article is not produced on the date of enactment of this Act [enacted Jan. 3, 1975] in the United States.

While the complaint alleges that duty-free treatment of the subject merchandise was denied pursuant to section 504(c)(1)(B) (the competitive need formula), plaintiff *does not allege* that such section was the *sole* basis for the President's action. In point of fact, Executive Order No. 12302, issued on April 1, 1981 (prior to the date of entry of any of the 122 entries that are the subject of this action) specifically cites section 504(a) as well as section 504(c) as authority for the President's action. Thus, the Executive Order reads, in pertinent part:

By virtue of the authority vested in me by the Constitution and statutes of the United States of America, including Title V of the Trade Act of 1974 (88 Stat. 2066, 19 U.S.C. 2461 *et seq.*) as amended \* \* \* and as President of the United States of America, in order to modify, *as provided by Sections 504(a) and (c) of the Trade Act of 1974* (88 Stat. 2070, 19 U.S.C. *2464(a) and (c)*), the limitations on preferential treatment for eligible articles from countries designated as beneficiary developing countries \* \* \*    [Emphasis added.]

█ The fact that the President acted under section 504(c)(1)(B), as alleged in the complaint, does not preclude the President's exercise of his power to deny duty-free entry to the subject merchandise in pursuance of his authority under section 504(a). It is well established that Presidential action may be grounded upon alternative statutory authorities. See, *e.g., United States Cane Sugar Refiners' Association v. John R. Block, Secretary of Agriculture, et al.,* 69 CCPA ——, 683 F.2d 399 (1982), *aff'g* 3 CIT ——, 544 F.Supp. 883 (1982); and *Aimcee Wholesale Corp. v. United States,* 60 CCPA 1, C.A.D. 1070, 468 F.2d 202 (1972), *aff'g* 66 Cust.Ct. 155, C.D. 4186, 324 F.Supp. 514 (1971). *Cf. The United States v. Yoshida International, Inc.,* 63 CCPA 15, C.A.D. 1160, 526 F.2d 560 (1975).

With respect to defendant's contention that section 504(a) serves as further authority for the validity of Executive Order No. 12302, plaintiff submits that no consideration should be given to section 504(a) inasmuch as the complaint makes no mention of that section. To sustain plaintiff's contention would be to place an unwarranted limitation upon judicial review. Again, it is emphasized that Executive Order 12302 does not designate section 504(c)(1)(B) as the sole source of authority. Accordingly, this Court has considered the argument presented by defendant with respect to the authority delegated to the President under section 504(a).

Section 504(a) explicitly grants to the President · plenary authority to withdraw, suspend, or limit duty-free treatment under the GSP after consideration of certain factors listed under sections 501 and 502(c). By the use of the term "may" in section 504(a), Congress indicated its permission and the broad discretion conferred to take the indicated actions. *Southern R. Co. v. Seaboard Allied Milling Corp.,* 442 U.S. 444,

455, 99 S.Ct. 2388, 2394, 60 L.Ed.2d 1017 (1979).

While under section 504(a) the President possesses broad discretion to deny duty-free treatment under the GSP, by contrast whenever the President determines under 504(c)(1)(B) that imports meet the competitive need formula, he must deny duty-free treatment unless he makes the alternative findings required by section 504(c)(1)(B)(i), (ii) and (iii). However, section 504(c)(1)(B) neither adds to nor diminishes the President's discretion under section 504(a) to deny duty-free treatment to imported goods, but rather section 504(c)(1)(B) limits the President's authority only in that he must withdraw duty-free treatment under the conditions stated. See Senate Rep. No. 93–1298, 93d Cong. 2d Sess., reprinted in *U.S.Code, Cong. & Ad. News* (1974), p. 7357; Senate Rep. No. 96–249, 96th Cong. 1st Sess., reprinted in *U.S. Code, Cong. & Ad.News* (1979), pp. 381, 657.

The purpose of section 504(d) is simply to qualify the President's mandate to withhold duty-free treatment in accordance with the competitive need limitation specified in section 504(c)(1)(B). This purpose is manifest from the text of section 504(c)(1)(B), "except as provided in subsection (d)". Thus, it is clear that section 504(d) is designed merely to qualify the application of the competitive need formula prescribed by section 504(c)(1)(B).

The legislative history of section 504(d) confirms that the provision was intended only to exempt articles from the mandatory withdrawal of duty-free treatment under section 504(c)(1)(B), and not to preclude the exercise of the President's discretion to withdraw, suspend, or limit such treatment under section 504(a). On that score, Senate Rep. No. 93–1298, at 7217, states:

9. *Products not produced in the United States.*—The Committee bill would *exempt* any product from the 50-percent-of-total-imports ceiling in Title V of the bill where there is no directly competitive article produced in the United States. Thus, even if a product from a particular developing country represents more than 50 percent of total U.S. imports of that product in any one calendar year, it *would still be eligible* for duty-free treatment under Title V of the bill if there were no directly competitive article produced in the United States. Under certain circumstances, the President could waive the 50 percent or $25 million ceiling. [Emphasis added.]

As can be seen from the portion of the House Report quoted *supra*, section 504(d) merely provides that the article "would still be eligible" for duty-free treatment, and does not grant a *right* to such treatment.

Plaintiff, relying upon a literal reading of section 504(a), insists that this section does not authorize the President to withdraw duty-free treatment respecting a *particular* article imported from a *particular* country, and that such action is authorized only by section 504(c)(1)(B). In this connection, plaintiff maintains that under section 504(a), the President may delete a *country* from the list of beneficiary developing nations, *or* he may withdraw *an article* from the list of eligible articles. As correctly observed by plaintiff, in the present case the President neither deleted India from the list of beneficiary nations, nor did he withdraw either buffalo leather or goat and kid leather, not fancy, from the list of eligible articles.

I am unable to agree with plaintiff's narrow reading of the President's authority under section 504(a). This section provides that "the President may withdraw, suspend, or *limit* the application of the duty-free treatment * * * with respect to any article or with respect to any country". (Emphasis added.) I agree with defendant's contention that in this case the President "limited" the duty-free treatment of the subject merchandise. Further, I must agree with defendant that the only method by which the President can "limit" the application of duty-free treatment respecting an article is by limiting the countries to which duty-free treatment for that article is granted; and conversely, the only way to "limit" the application of duty-free treatment respecting a particular country, is to limit the duty-

free articles from that country. This interpretation accords appropriate significance to the term "limit" in the statute, and reflects what I believe was the Congressional intent to grant the President broad discretion in the administration of the GSP.

In sum, the President's action in limiting the application of duty-free treatment concerning the subject merchandise was within the President's delegated authority under section 504(a).

■ Plaintiff also challenges defendant's broad construction of the President's authority under section 504(a) as an unconstitutional delegation of legislative authority, following the rationale of *J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624 (1928). I disagree.

In *Hampton,* which involved Presidential power to increase or decrease duties under the Tariff Act of 1922, the Supreme Court said, through Chief Justice Taft (276 U.S. at 409, 48 S.Ct. at 352):

> It is conceded by counsel that Congress may use executive officers in the application and enforcement of a policy declared in law by Congress and authorize such officers in the application of the congressional declaration to enforce it by regulation equivalent to law. But it is said that this never has been permitted to be done where Congress has exercised the power to levy taxes and fix customs duties. The authorities make no such distinction.

The same principle that permits Congress to exercise its rate-making power in interstate commerce by declaring the rule which shall prevail in the legislative fixing of rates, and enables it to remit to a rate-making body created in accordance with its provisions the fixing of such rates, justifies a similar provision for the fixing of customs duties on imported merchandise.

In making findings of fact and implementing the provisions of section 504 by executive orders, the President acts merely as an agent of Congress in effectuating a legislative policy relating to an exclusively legislative function in determining the dutiability of imported goods.

Counsel for plaintiff concedes that "Presidential acts are not unconstitutional if the delegated legislative authority has guidelines for its exercise" (Plaintiff's memorandum, at 39). As a precondition to taking action under section 504(a), the statute mandates that the President *shall* consider the factors set forth in sections 501 and 502(c) of Title V (19 U.S.C. §§ 2461 and 2462(c)).[5] Plainly, then, Congress has provided the President with adequate standards for the exercise of his authority under section 504(a). Moreover, after prescribing the pertinent factors, the President's authority is circumscribed: Under section 504(a), rates of duty may not be

---

**5.** 19 U.S.C. § 2461 provides:

The President may provide duty-free treatment for any eligible article from any beneficiary developing country in accordance with the provisions of this title [19 USC §§ 2461 et seq.; amendments to 19 USC § 1202]. *In taking any such action, the President shall have due regard for —*
(1) the effect such action will have on furthering the economic development of developing countries;
(2) the extent to which other major developed countries are undertaking a comparable effort to assist developing countries by granting generalized preferences with respect to imports of products of such countries; and
(3) the anticipated impact of such action on United States producers of like or directly competitive products.
19 U.S.C. § 2462(c) provides:

(c) *Factors determinative of whether to designate country as beneficiary developing country.* In determining whether to designate any country a beneficiary developing country under this section, *the President shall take into account —*
(1) an expression by such country of its desire to be so designated;
(2) the level of economic development of such country, including its per capita gross national product, the living standards of its inhabitants, and any other economic factors which he deems appropriate;
(3) whether or not the other major developed countries are extending generalized preferential tariff treatment to such country; and
(4) the extent to which such country has assured the United States it will provide equitable and reasonable access to the markets and basic commodity resources of such country. [Emphasis added.]

adjusted, nor may the President impose quantitative limitations; the President may only withdraw, suspend, or limit the application of duty-free treatment. Importantly, too, Congress has required Presidential reporting under section 505.

An additional factor bearing upon the delegation question is that in exercising his authority under section 504(a) the President is necessarily confronted with weighty considerations of foreign relations with the developing nations as well as the economic and commercial objectives of the GSP. Obviously, a statute giving the President substantial discretion with respect to the withdrawal, suspension, or limitation of duty-free treatment of importations from a beneficiary developing country can normally be expected to have wide-ranging foreign relations implications as well as domestic economic and political repercussions. The foreign affairs component of the President's delegated authority under section 504(a) implicates a vitally broad grant of executive authority in an area left by Congress to the President's judgment. In this vein, Judge Davis of the United States Court of Claims [6], pointedly observed in *South Puerto Rico Sugar Co. Trad. Corp. v. United States,* 334 F.2d 622, 167 Ct.Cl. 236 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965).

The presence of foreign factors adds still more to the range of the powers transmitted by the phrase because, as the Supreme Court has explicitly recognized, a delegation of unusually extensive discretion to the President is not uncommon in the external realm. "Practically every volume of the United States Statutes contains one or more acts or joint resolutions of Congress authorizing action by the President in respect of subjects affecting foreign relations, which either leave the exercise of the power to his unrestricted judgment, or provide a standard far more general than that which has always been considered requisite with regard to domestic affairs." [Citations omitted.] In the external sector of the

national life, Congress does not ordinarily bind the President's hands so tightly that he cannot respond promptly to changing conditions or the fluctuating demands of foreign policy. Accordingly, when Congress uses far-reaching words in delegating authority to the President in the area of foreign relations, courts must assume, unless there is a specific contrary showing elsewhere in the statute or in the legislative history, that the legislators contemplate that the President may and will make full use of that power in any manner not inconsistent with the provisions or purposes of the Act. *In a statute dealing with foreign affairs, a grant to the President which is expansive to the reader's eye should not be hemmed in or "cabined, cribbed, confined" by anxious judicial blinders.* [Footnote omitted.] [Emphasis added.]

See also: *Star-Kist Foods, Inc. v. United States,* 47 CCPA 52, C.A.D. 728, 275 F.2d 472 (1959), and cases discussed therein.

In light of the statutory framework considered above, and taking cognizance of the long-standing judicial approval of broad grants of authority to the President in the sphere of foreign relations and commerce, I am not persuaded to give section 504(a) the narrow construction urged by plaintiff. *Cf. FEA v. Algonquin SNG, Inc.,* 426 U.S. 548, 558–60, 96 S.Ct. 2295, 2301–02, 49 L.Ed.2d 49 (1976).

## *Reviewability of Presidential Discretionary Action and Fact Finding*

We now turn to defendant's contention that neither the President's exercise of discretion under section 504(a) nor his findings of fact under sections 504(c)(1)(B) and 504(d) are within the permissible scope of judicial review. I consider the scope of the Court's review to be the core issue raised herein. This issue is of transcendent importance given the President's key role in the implementation of the legislative policy underlying many of our international trade statutes.

---

**6.** Now a Circuit Judge of the United States Court of Appeals for the Federal Circuit.

## 1.

Initially, we discuss the limitations on judicial review of the President's action taken under section 504(a). As we have seen, under that provision Congress has delegated to the President broad discretionary authority, essentially legislative in nature, to withdraw, suspend, or limit the application of duty-free treatment under the GSP, after consideration of the factors specified in sections 501 and 502(c).

The President's action under section 504(a) in withdrawing, suspending, or limiting the application of duty-free treatment under the GSP is "[i]n substance and to a great extent in form * * * but one stage of the legislative process". *United States v. George S. Bush & Co., Inc.,* 310 U.S. 371, 379, 60 S.Ct. 944, 946, 84 L.Ed. 1259 (1940). It is now well established by a long line of authorities that the exercise of broad discretionary authority delegated by Congress to the President in the sphere of international trade, where the President is acting essentially as an agent of Congress, is reviewable by the Courts only to determine whether the President's action falls within his delegated authority, whether the statutory language has been properly construed, and whether the President's action conformed with procedural requirements (if any).[7] Neither the President's findings of fact nor his motivations may be inquired into by the judiciary. *United States v. George S. Bush & Co., supra; Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); *United States Cane Sugar Refiners' Association v. John R. Block, Secretary of Agriculture, et al., supra; United States v. Yoshida International, Inc., supra; Aimcee Wholesale Corp. v. United States, supra; United States v. Star Industries, Inc.,* 59 CCPA 159, C.A.D. 1060, 462 F.2d 557 (1972), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 678, 34 L.Ed.2d 663 (1973); *United States v. The Best Foods, Inc.,* 47 CCPA 163, C.A.D. 751

(1960); *Farr Mann & Co., Inc. and The National Sugar Refining Co. v. United States,* 4 CIT ——, 544 F.Supp. 908 (1982); *Falcon Sales Company, et al. v. United States,* 47 Cust.Ct. 129, C.D. 2292, 199 F.Supp. 97 (1961); and *Independent Gasoline Marketers Council v. Duncan,* 492 F.Supp. 614 (D.D.C.1980).

As concluded above, based upon this Court's construction of the statute, the President's *limitation* on the application of duty-free entry regarding the subject merchandise was within his delegated authority under section 504(a).

Concerning review of the Executive's findings and exercise of discretion as an agent of Congress, the following observations of the Appellate Term of the former Customs Court in *Ellis K. Orlowitz Co. v. United States,* 47 Cust.Ct. 583, 585, A.R.D. 136, 200 F.Supp. 302, 305 (1961), *aff'd* 50 CCPA 36, C.A.D. 816 (1963), are pertinent:

Congress can, and often does, delegate to the President, or other executive officer or agency, authority to make findings in prescribed situations, and, on the basis of such findings, to promulgate orders. This is a permissible delegation of legislative authority to the executive branch of our Government. It is axiomatic that courts are not to review the discretion exercised by the President, or other executive officer or agency, in arriving at findings in such matters. Citation of authority is not necessary to support this well-recognized rule, requiring judicial noninterference in legislative authority constitutionally conferred by Congress on the executive.

Moreover, in exercising his discretion under section 504(a), the President is mandated to consider the several interactional and somewhat subjective factors specified in

---

**7.** I am mindful, of course, of the recent decision by my learned colleague, Judge Carman, in *Maple Leaf Fish Co. v. United States,* 5 CIT ——, 566 F.Supp. 899 (1983). To the extent that *Maple Leaf* holds that the Court has jurisdic-tion of the action under 28 U.S.C. § 1581(a), and may determine whether the administrative action conformed with procedural requirements, I agree with Judge Carman's opinion.

sections 501 and 502(c).[8] These factors involve "a multifaceted judgmental decision" in matters of international and domestic economics and foreign relations. *Montgomery Ward & Co., Inc. v. Zenith Corp.,* 69 CCPA ——, 673 F.2d 1254, 1262, *cert. denied,* —— U.S. ——, 103 S.Ct. 256, 74 L.Ed.2d 200 (1982). Consequently, respecting discretionary action under section 504(a), there is "no law to apply" for a reviewing court. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971); *Montgomery Ward & Co., Inc. v. Zenith Corp., supra,* 673 F.2d at 1262. As aptly stated by Judge Nies, writing for our Appellate Court in *Montgomery Ward* (673 F.2d at 1261):

> With respect to discretionary acts of the Executive, * * * the extent of permissible judicial review, varies with the statutory grant to the Executive. [Footnote omitted.] In summary, if action is committed by law to the discretion of the Executive, no review is permitted. If action is committed by law to discretion but procedural requirements are imposed, the satisfaction of procedural requirements, but only these, may be judicially reviewed. If an action is discretionary but there is law from which a court may determine that the exercise of discretion is arbitrary, capricious, or not in accordance with law, the decision itself may be reviewed on that limited basis.

**2.**

In addition to stressing the Court's narrow scope of review where the President has been delegated discretionary authority to act as an agent of Congress, defendant also correctly urges the constraint upon judicial review of the factual findings upon which the President (or his delegate) relied in taking the statutorily prescribed legislative action. Specifically, plaintiff challenges the President's action taken under the competitive need formula in section 504(c)(1)(B) alleging an erroneous finding as to a like or directly competitive article under section 504(d).[9] Significantly, however, regarding section 504(d), the complaint does not allege any procedural noncompliance nor any specific misconstruction of the statutory language in section 504(c)(1)(B) or section 504(d). Rather, it is clear from the complaint and plaintiff's brief that plaintiff's grievance lies solely in the factual findings and determinations of the President and his delegate (the USTR) under 504(d), *viz.,* that articles like or directly competitive with the imported articles were produced in the United States on January 3, 1975.[10] On that aspect of the case, plaintiff seeks *de novo* review under 28 U.S.C. § 2640[11]; or alternatively that

**8.** See footnote 5.

**9.** Thus, plaintiff is not challenging the determination of the President that the competitive need limitation was, in fact, exceeded; instead, plaintiff wishes to establish that notwithstanding that excess, there was, in point of fact, no like or directly competitive article produced in the United States on January 3, 1975 within the meaning of section 504(d); and that consequently, the President's action under section 504(c)(1)(B) was *ultra vires.* Plaintiff maintains that the President's action "resulted from reliance on inadequate or erroneous, decision making or *fact finding* by the administrative agencies such as the USTR or ITC" (Plaintiff's memorandum, at 42, emphasis added).

**10.** Since section 504(c)(1)(B), reads, "except as provided in subsection (d)", a finding of fact under subsection (d) is subsumed by the application of the competitive need formula. Moreover, a finding of fact under subsection (d) respecting a like or directly competitive article

is implicit in action taken under section 504(c)(1)(B) based upon the qualifying language in subsection (d). Presumptively, the President makes all the necessary findings of fact that are a condition precedent to his exercise of delegated authority. However, the President is not required to recite in his order the fact that he has made the requisite findings or the findings themselves. *Aimcee Wholesale Corp. v. United States,* 60 CCPA 1, C.A.D. 1070, 468 F.2d 202 (1972).

**11.** That provision reads:

"§ 2640. *Scope and standard of review*
    (a) The Court of International Trade shall make its determinations upon the basis of the record made before the court in the following categories of civil actions:
    (1) Civil actions contesting the denial of a protest under section 515 of the Tariff Act of 1930."

this Court should review the involvement of the administrative agencies (*viz.,* the USTR and the ITC) to determine whether their action was arbitrary, capricious, or otherwise not in accordance with law. Assuming, as we must, for purposes of defendant's motion to dismiss, that the factual allegations of the complaint are accepted as true, the question is whether the permissible scope of review in this action encompasses the factual foundation for the President's action.

Central to the question of the permissible scope of review of the President's factual findings based upon an investigation by the ITC is the teaching of the United States Supreme Court in the landmark decision in *United States v. George S. Bush & Co., supra,* 310 U.S. at 379–80, 60 S.Ct. at 946–47, wherein Justice Douglas writing for the Court commented:

The powers which Congress has entrusted to the President under the Act of 1930 do not essentially differ in kind from those which have been granted him under the tariff acts for well over a century. See *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 308 [53 S.Ct. 350, 355, 77 L.Ed. 796] *et seq.,* for a review of the statutes. Since its creation in 1916 the Commission has acted as an adviser to the Congress or to the President. Under § 336 of the Act of 1930 the Commission serves the President in that role. *It does not increase or decrease the rates of duty; it is but the expert body which investigates and submits the facts and its recommendations to the President. It is the judgment of the President on those facts which is determinative of whether or not the recommended rates will be promulgated.* In substance and to a great extent in form (*Norwegian Nitrogen Products Co. v. United States, supra*) the action of the Commission and the President is but one stage of the legislative process. *Hampton & Co. v. United States,* 276 U.S. 394 [48 S.Ct. 348, 72 L.Ed. 624]. 'No one has a legal right to the maintenance of an existing rate of duty.' *Norwegian Nitrogen Products Co. v. United States, supra,* [288 U.S.] p. 318

[53 S.Ct. p. 359]. And the judgment of the President that on the facts, adduced in pursuance of the procedure prescribed by Congress, a change of rate is necessary is no more subject to judicial review under this scheme than if Congress itself has exercised that judgment. *It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review.* [Citations omitted.]

Continuing, the Supreme Court held:

*For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains. Under the Constitution it is exclusively for Congress or those to whom it delegates authority, to determine what tariffs shall be imposed.* Here the President acted in full conformity with the statute. No question of law is raised when the exercise of his discretion is challenged. [Emphasis added.]

Citing and following *Bush,* Chief Judge Markey, writing for the Court of Customs and Patent Appeals (now the United States Court of Appeals for the Federal Circuit), cogently stated, in sustaining the validity of a Presidential Proclamation imposing quotas on the importation of sugar:

The President's action being authorized by the statute on which he relied, his motives, his reasoning, *his finding of facts requiring the action, and his judgment, are immune from judicial scrutiny. United States v. George S. Bush & Co., Inc.,* 310 U.S. 371 [60 S.Ct. 944, 84 L.Ed. 1259] (1939). Beyond the truism that an action may be multi-purposed, and the distinction between the proclamation that is in issue and the press release that is not, Association's concentration on what it insists was the President's real purpose is simply irrelevant. Grist it may be for the executive or legislative mills; grist it

cannot be for the mills of the judicial branch. *In sum, let the President's action be authorized, and let his action be within the authorizing provisions of the law he cites, and the role of the judiciary is at an end.* [Footnote omitted.] [*United States Cane Sugar Refiners' Association,* 683 F.2d at 404.] [Emphasis added.]

Further, in *The Best Foods, Inc. v. United States,* 39 Cust.Ct. 305, C.D. 1945 (1957), aff'd 42 Cust.Ct. 310, Abst. 62865 (1959), aff'd 47 CCPA 163, C.A.D. 751 (1960), the limitation on judicial review of Presidential action predicated upon Commission findings was put in the following way (39 Cust.Ct. at 307, 309, and 314):

Clearly we may not, as defendant rightly argues, 'review' Tariff Commission proceedings, in the sense of either affirming or reversing such proceedings. We may not go behind the findings of the Tariff Commission, nor may we challenge the discretion of the President in his decision based on such findings. We do not presume to do any of these things.

\* \* \* \* \* \*

As previously observed, we do not have jurisdiction to review either the President's findings or fact, or his discretion, or the proceedings of the Tariff Commission.

\* \* \* \* \* \*

We do not review the findings of the Commission or of the President. We do not review the Presidential discretionary determination of action to be taken. *We review only the issue as to whether the action taken, pursuant to a certain procedure is action within the statutory delegation of legislative authority to be exercised pursuant to that procedure.* [Emphasis added.]

See also *T.M. Duche & Sons, Inc. v. United States,* 36 CCPA 19, C.A.D. 391 (1948), *cert. denied,* 336 U.S. 931, 69 S.Ct. 738, 93 L.Ed. 1091 (1949).

Plaintiff's attempt in the present case to obtain review of the factual basis upon which the President's action was taken would unavoidably involve an impermissible inquiry by the Courts into the President's decision-making process and into the existence of the facts calling for the exercise of his delegated authority. The above-cited precedents concerning the scope of review of Presidential action taken as an agent of Congress in conformance with delegated legislative authority are plainly at variance with the plaintiff's contentions. Patently, this Court is not authorized to "chart a new course in jurisprudence in a field in which precedents have been established by the Supreme Court." *Star-Kist Foods, Inc. v. United States,* 47 CCPA at 55. Accordingly, plaintiff's contention that this Court should undertake *de novo* review of the findings and determinations of the involved administrative agencies (the USTR and the ITC) or alternatively undertake to determine whether their findings were arbitrary and capricious has no precedential support.

Plaintiff's reliance upon the scope and standard of review of Commission proceedings in antidumping and countervailing duty cases, clearly, is misplaced since the scope and standard of review in such cases are specifically prescribed by statute. See 19 U.S.C. § 1516a(b); 28 U.S.C. § 2640(b). However, there is no statutory authority for reviewing the evidence before the USTR or the ITC or their findings in connection with the President's action under section 504.

In the final analysis, plaintiff essentially seeks to overturn *Presidential action* rather than agency findings, recommendations or advice. Since it is the President who must be the ultimate judge of the facts adduced by the USTR (on the investigation of the ITC), there is simply no occasion in the present case for judicial review of agency fact finding.[12]

---

**12.** There is no merit whatever to plaintiff's contention that 19 U.S.C. § 1514 permits judicial review under the circumstances presented here. By making "the legality of all order and findings" of the appropriate customs officer

final and conclusive unless a timely protest is filed in accordance with 19 U.S.C. § 1514, Congress plainly did not intend that the Courts should review the President's findings for the purpose of determining whether there was sub-

### Conclusion

Plaintiff (importer of the subject merchandise) whose protests were denied by the Customs Service pursuant to 19 U.S.C. § 1515, has standing under 28 U.S.C. § 2631(a) to contest the classification and assessment of duties on the subject merchandise.

However, under section 504(a) Congress delegated to the President broad discretionary authority of a legislative nature to withdraw, suspend, or limit duty-free treatment under the GSP; and in the instant case, the President properly exercised his authority to "limit" the application of duty-free treatment to the subject merchandise. Upon consideration of the narrow scope of judicial review in cases of Congressional delegation of legislative authority to the President, particularly where foreign affairs are involved, neither the exercise of discretion by the President under section 504(a) nor his findings of fact under sections 504(a) and 504(c) are subject of judicial review. Hence, in exercise of appropriate judicial restraint, I find that plaintiff's complaint fails to state a claim upon which relief can be granted.

This action is dismissed, and judgment will be entered accordingly.

stantial evidence to support his action taken pursuant to delegated legislative authority. *Cf.*

*T.M. Duche & Sons, Inc. v. United States,* 36 CCPA at 27.