**Charles E. and Carol M. SAUNOOKE, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 129–85T.**

United States Claims Court.

June 5, 1985.

Charles A. Hobbs, Washington, D.C., for plaintiffs. Orville Coward, Sylva, N.C.; Steve C. Horowitz, Gastonia, N.C.; and Theodore A. Shields, Hobbs, Straus, Dean & Wilder, Washington, D.C., of counsel.

Theodore D. Peyser, Jr., Washington, D.C., with whom were Mildred L. Seidman and Asst. Atty. Gen. Glenn L. Archer, Jr., for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiffs have moved for class action certification pursuant to RUSCC 23. Defendant opposes.

## FACTS

On March 6, 1985, Charles E. Saunooke, Charles Bradley, Carolyn Crowl, and Nathan Robinson, all enrolled members of the Eastern Band of Cherokee Indians, a federally recognized tribe residing in North Carolina, along with their spouses ("plaintiffs"), filed a complaint seeking a refund of federal income taxes pursuant to Internal Revenue Code ("I.R.C.") § 7422, 26 U.S.C. § 7422 (1982).

By motion filed simultaneously with their complaint, plaintiffs requested certification of a general class consisting of enrolled members of the Eastern Band of Cherokee Indians of North Carolina who own "possessory holdings" and derive income directly from such holdings. Plaintiffs also sought appointment as representatives of the proposed class.

The complaint and motion allege that all land located on the Cherokee Reservation is owned by the United States in trust for the tribe pursuant to the Act of June 4, 1924, Pub.L. No. 190, 43 Stat. 376 (codified at 25 U.S.C. § 331 note (1982)) (the "Act"). Under section 21 of the Act, 43 Stat. 381, lands allotted to individual members of the tribe, as well as undivided parcels, are exempt from taxation. *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956), restricted the exemption to include only income derived directly from the land.[1]

The named plaintiffs and all members of the proposed class claim that they have been disallowed the aforementioned exemp-

---

1. *See* Rev.Rul. 56–342, 1956–2 C.B. 20 (income derived directly from allotted and restricted Indian lands exempt from federal income tax); Rev.Rul. 67–284, 1967–2 C.B. 55, 56–57 (five-part test for determining whether Indian income exempt from federal taxation).

tion for that part of their income derived directly from their possessory holdings. The income, if any, so derived is generated by the commercial businesses operated on plaintiffs' possessory holdings. At issue in this case are tax years 1971–75 and 1977–82.[2] Thus far none of the members of the proposed class, with the exception of the named plaintiffs, has complied with the jurisdictional preconditions for a tax refund action in this court—payment of any assessed deficiency and timely claim for refund. Accordingly, by their reply brief, plaintiffs seek to recharacterize the class to include only those Eastern Cherokee taxpayers who have filed timely claims for refund, and they request certification of the proposed class on a provisional basis until further jurisdictional compliance material is gathered with respect to the entire class.

## DISCUSSION

*Class Actions in the United States Court of Claims and the United States Claims Court*

The case history developed by the former Court of Claims and the present Claims Court reveals that the class action has been "generally disfavored" and should be reserved only for "extraordinary cases." *O'Hanlon v. United States,* 7 Cl.Ct. 204, 206 (1985) (citing, *inter alia, Kominers v. United States,* 3 Cl.Ct. 684 (1983); and *Cooke v. United States,* 1 Cl.Ct. 695 (1983) (orders denying class action certification)). Although the reported decisions provide no definitive reasons for the limited regard that the class action has received in both courts, several considerations have emerged. First, the majority of actions in this court seek money judgments, 28 U.S.C. § 1491(a)(1) (1982);[3] *see Opalack v. United States,* 5 Cl.Ct. 349, 360 (1984), and litigants must individually prove both their

damages and the quantum thereof sustained by reason of governmental conduct.

Consistent with the principle that waivers of sovereign immunity are narrowly construed, *see, e.g., United Construction Co. v. United States,* 7 Cl.Ct. 47, 50 (1984) (order denying motion for summary judgment) (citing cases), neither this court nor its predecessor ever indicated a tolerance for speculation in damage determinations. Accordingly, the courts have required each claimant, in sustaining its burden of proof, to provide a sufficient basis for determining damages sought. *See G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 719, 740 (1984); *Willems Industries, Inc. v. United States,* 155 Ct.Cl. 360, 376, 295 F.2d 822, 831 (1961), *cert. denied,* 370 U.S. 903, 82 S.Ct. 1249, 8 L.Ed.2d 400 (1962). It is inconsistent with the courts' unwillingness to speculate as to damage determinations to permit a large number of claimants to seek relief through a class action. As a practical matter, only the named plaintiffs or class representatives are capable of satisfying this strict burden of proof. Further, RUSCC 42 governing consolidations provides an alternative under which numerous litigants possessing similar claims can consolidate their actions. By proceeding under Rule 42, the court does not sacrifice its interest in individualized damage determinations.

Secondly, the class action has gained disfavor because of a recognition by the Claims Court and its predecessor of the flaws in maintaining the action as either a so-called opt-in or opt-out proceeding. *See Quinault Allottee Ass'n v. United States,* 197 Ct.Cl. 134, 140, 453 F.2d 1272, 1275 (1972) (order granting class action certification). Since its initial application in the Court of Claims, the device has never been viewed as one which should operate to bind the parties to either its unfavorable or even favorable results under those circumstanc-

---

**2.** Exhibits A–D of the complaint indicate the applicable tax years for the named plaintiffs. Similar information has not been supplied for the remaining members of the proposed class.

**3.** The fact that the majority of class actions in district court are for declaratory relief, coupled with the limited jurisdiction of the Claims Court to issue such relief, also serves to explain the infrequent occurrence of class actions.

es in which such individuals have failed to opt out or request class exclusion. *O'Hanlon*, 7 Cl.Ct. at 207 (citing *Quinault*, 197 Ct.Cl. at 141, 453 F.2d at 1276). Conversely, an opt-in approach, or one that affords protection to individuals who choose not to enter into a proposed class, places the court in the "decidedly uncomfortable position under our system of jurisprudence" of, in effect, inviting potential litigants to come forward with their claims. *See Cooke v. United States*, 1 Cl.Ct. at 698. Reflecting dissatisfaction with class action procedures, *Cooke* states that the court should "be reluctant to certify a class unless it is convinced that to do so would serve the interests of justice." *Id.*

The unique jurisdiction of the court also limits the utility of the class action. "[T]he defendant in our cases is always the same—the United States...." *Cooke*, 1 Cl.Ct. at 697–98. The Claims Court is precluded from adjudicating claims against individuals. *E.g., Grundy v. United States*, 2 Cl.Ct. 596, 598 (1983). Once one prevails against the United States and an issue is actually and necessarily determined by the Claims Court, the doctrine of offensive collateral estoppel can bind the United States in subsequent actions by different individuals with respect to previously litigated issues. For the doctrine to apply, "both the prior and subsequent litigations need only have one party in common...." *Monterey Life Systems, Inc. v. United States*, 225 Ct.Cl. 50, 61, 635 F.2d 821, 827 (1980). "Mutuality of parties is no longer required...." *Department of Natural Resources & Conservation v. United States*, 1 Cl.Ct. 727, 737 (1983). In this court the results achieved by class action can be as easily obtained by individual suits. *See Cooke*, 1 Cl.Ct. at 698.

Finally, Congress conferred on this court power to make its own rules. 28 U.S.C. § 2503(b) (1982). Departing from the formulation utilized by the former Court of Claims, which had been carried over into the new rules of this court, *see Kominers v. United States*, 3 Cl.Ct. 684, 685–86, the Claims Court adopted in its stead the following Rule 23 effective on February 15, 1984:

A motion to certify a class action shall be filed with the complaint and comply with Rule 3(c), with service to be made as provided in Rule 4. The court shall determine in each case whether a class action may be maintained and under what terms and conditions.

*Refund Claims as Class Actions*

This case is particularly ill-suited for class certification by virtue of its status as a tax refund claim. Under I.R.C. § 7422(a), the United States has waived its sovereign immunity for tax refund claims. However, the waiver of immunity is limited. Accordingly, tax refund suits must be maintained "strictly within the terms of the statute under which the sovereign has consented to be sued." *Lipsett v. United States*, 37 F.R.D. 549, 551 (S.D.N.Y.1965) (quoting *10 Mertens Law of Federal Income Taxation*, § 58 A.02, at 4 (1984 ed.)).

Plaintiffs recognize that strict adherence to sovereign immunity mandates that this court cannot gain subject matter jurisdiction over a tax refund action until each member of the proposed class has paid his entire assessed deficiency and filed a timely claim for refund pursuant to 26 U.S.C. § 7422(a). *Frise v. United States*, 5 Cl.Ct. 488, 490 (1984) (citing cases); *B & M Gross Corp. v. United States*, 4 Cl.Ct. 792, 794 (1984). Thus far only the named plaintiffs have satisfied the jurisdictional preconditions.

Seeking to achieve jurisdictional compliance by the entire proposed class, the named plaintiffs narrow the size of their class to include only those Eastern Cherokee Indian taxpayers who have filed timely claims for refund. They request provisional class action certification or, more specifically, deferral of such determination until entry of final judgment. Plaintiffs contend that by final judgment, jurisdictional compliance information concerning the unnamed class members will be supplied to the court to enable it to issue a final order regarding certification. The

procedure suggested for bringing the proposed class action within the court's subject matter jurisdiction, however, would contravene settled law militating against deferred certification determinations [4] and serves only to emphasize the problems associated with the pursuit of tax refund claims in a class action context.

*Lipsett v. United States,* 37 F.R.D. 549 (S.D.N.Y.1965), illustrates the individualized, rather than class-oriented, nature of tax refund actions. In *Lipsett* claimants sought refund of their taxes by class action. After refusing certification for inadequacy of class size, the court also refused to permit movants to intervene, stating that by nature "a tax refund action involves in effect a reaudit of the individual taxpayer's return for the time period in question (citing *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)), and not merely the ground on which the refund is sought...." *Lipsett,* 37 F.R.D. at 552. Whether the tax refund action is litigated as a class action or one in which the movants seek intervention, the court has the responsibility of "adjudicating the validity of each item on [each claimant's return]." Such a "conglomerate" refund action would be both "chaotic" and burdensome for both the parties and the court involved. 37 F.R.D. at 552–53.

█ Moreover, evidentiary considerations render impractical the disposition of tax refunds as class actions. In a suit for refund of federal taxes, the court begins its inquiry by recognizing that determinations of the Internal Revenue Service are presumed to be correct. *See, e.g., Chilton T.C. AU v. United States,* 4 Cl.Ct. 441, 442 (1984). To prevail each individual must not only establish the error in his particular assessment, but also the correct amount of taxes. *E.g., Luce v. United States,* 4 Cl.Ct. 212, 222 (1983); *Viereck v. United States,* 3 Cl.Ct. 745, 750 (1983). As with the burden of proof in the court with respect to damages, it is virtually impossible in a class action to achieve the individualized results demanded under this burden of proof.

### Application of the Federal Rules of Civil Procedure

In support of their motion, plaintiffs rely on *Kominers v. United States,* 3 Cl.Ct. 684, 685; *Crone v. United States,* 210 Ct.Cl. 499, 515, 538 F.2d 875, 884 (1976); and *Quinault Allottee Ass'n,* 197 Ct.Cl. 134, 140–41, 453 F.2d 1272, 1276, for the proposition that Fed.R.Civ.P. 23 supplies "persuasive criteria" for determinations in the Claims Court concerning class action certification.

Plaintiffs thoroughly analyze this case under the criteria whose development drew from various portions of Fed.R.Civ.P. 23 and which were adopted in *Quinault.* The Federal Rule, however, was not deemed binding on this court's predecessor. *Crone,* 210 Ct.Cl. at 515, 538 F.2d at 884. Thus, the court in *Quinault* deemed these criteria "[persuasive] in appropriate cases," even though the criteria of Federal Rule 23

**4.** As authority for deferring the certification determination until such a late stage in this proceeding, plaintiffs cite *General Telephone Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982), and its reference to Fed.R.Civ.P. 23(c)(1). The second sentence of Fed.R.Civ.P. 23(c)(1) speaks to the delayed issuance of a certification order or the subsequent modification thereof, but plaintiffs fail to recognize the rule's first sentence or *Falcon* 's reference to it. 457 U.S. at 160 n. 16, 102 S.Ct. at 2372 n. 16. Rule 23(c)(1) states: *"As soon as practicable* after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained...." (Emphasis added.) Case law interpreting this sentence dictates the well-settled proposition that class certification should precede any determination on the merits of a case. *Otto v. Variable Annuity Life Insurance Co.,* 98 F.R.D. 747 (N.D.Ill.1983) (citing *Peritz v. Liberty Loan Corp.,* 523 F.2d 349, 353–54 (7th Cir.1975); and *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974)).

Although not applicable in this case, an exception exists to the general rule against provisional certification when defendant waives the right to early class determination. *See Ahne v. Allis-Chalmers Corp.,* 102 F.R.D. 147, 149–51 (E.D. Wis.1984) (order deferring certification determination until disposition of cross-motions for summary judgment).

were held not to be requirements. *Crone, id.; Quinault,* 197 Ct.Cl. at 139, 453 F.2d at 1275; *see Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 442 F.2d 1234, 1239 (D.C.Cir.1971) (Federal Rules of Civil Procedure not designed to apply in any .proceeding other than the ones in United States district courts).[5] Although the *Quinault* standards now do not merit endorsement as the exclusive criteria for certification determinations in this court, their recognition in *O'Hanlon,* 7 Cl.Ct. at 206, warrants at least their application to the facts of this case.[6]

▮ First, with respect to the commonality of claims requirement, .plaintiffs' version of the common legal issues in this case asks "whether the class members are being unlawfully taxed on the amount of income which they directly derive from their possessory holdings....", Plfs' Mem. filed Mar. 6, 1985, at 6, and, although this does represent a question common to the entire class, it is not a complete statement of the predominant legal issue. Plaintiffs' inquiry is resolved promptly under section 21 of the Act and *Squire v. Capoeman,* 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883. Taxation of the income from class members derived directly from their possessory holdings is unlawful. Rather, the dispositive legal issue in this case is as defendant suggests: whether the income produced by the commercial operations conducted on the possessory holdings of members of the proposed class may be considered directly derived from the land and thus tax exempt. *See Critzer v. United States,* 220 Ct.Cl. 43, 55, 597 F.2d 708, 715, *cert. denied,* 444 U.S. 920, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979).

It is unlikely that the resolution of the legal issue will involve a common question for any of the members of the proposed class, because the commercial operations on each class member's possessory holding must be examined to determine whether the income from such operations is directly derived from the land.

The commonality requirement also is not satisfied with respect to factual issues in this case. Although a precise statement of the uncommon factual issues need not be set out at this juncture, they would ultimately entail individualized quantitative determinations of the applicable tax exemptions, if any. *Cooke* denied class action certification where the factual issues in dispute concerned status and damage questions particular to each claimant, and for the same reason denial is warranted here. 1 Cl.Ct. at 699. Further, *Cooke* indicates that where factual issues are not common among numerous potential plaintiffs, the class action is of no greater value than repetitive lawsuits, since under either form of proceeding separate determinations of each factual issue would remain necessary. 1 Cl.Ct. at 698.

Secondly, plaintiffs contend that the risk of inconsistent adjudications in this case warrants class certification and in support of their contention cite *Cooke.* While *Cooke* is correctly cited for the proposition that there exists a risk of inconsistent judgments in tax refund actions by virtue of the concurrent jurisdiction of the district courts and this court over such suits, 28 U.S.C. § 1346(a)(1), and counsels that class action treatment be granted "most liberally" in cases that could involve concurrent jurisdic-

---

5. In their reply plaintiffs cite to several tax cases, including *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968), which was certified as a class action. Although each of these state and federal cases, which were decided under the Federal Rules or their equivalent, has been examined carefully, the court declines to follow them based on the policy considerations discussed in the text of this order.

6. For refund actions in a class context, the class can only be as large as the number of members

who have fulfilled all required jurisdictional preconditions. Thus, with provisional certification barred, the proposed class in this case consists of at most 14 members—the four named plaintiffs (and their spouses) and the six additional taxpayers who plaintiffs allege have filed or soon will file claims for refund. Viewing matters in the light most favorable to plaintiffs, the *Quinault* standards shall be applied without regard to the failure to satisfy jurisdictional prerequisites.

tion, 1 Cl.Ct. at 697–98 & n. 4, the risk is not so excessive in this instance as to warrant class certification. Venue in tax refund actions is proper only in the judicial district where the taxpayer resides. *See, e.g., Noonis v. United States,* 539 F.Supp. 404–05 (S.D.Cal.1982). All named plaintiffs and potential class members reside in North Carolina. Accordingly, refund actions pursued by plaintiffs individually could be brought only in the appropriate North Carolina district courts or this court. This is not the type of action where plaintiffs could sue in the Claims Court as well as various district courts throughout the country.

Thirdly, and notwithstanding the fact that resolution of the jurisdictional issue renders inadequate the size of the class in this case, plaintiffs' allegation that the proposed class will consist of at least 50 members is insufficient to satisfy the numerosity, or class size, requirement. *See, e.g., Evans v. United States Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983) (showing of precise numbers is not required, but mere allegations of numerosity are inadequate); *Waller v. International Harvester Co.,* 98 F.R.D. 560, 563 (N.D.Ill. 1983) (numerosity requirement not satisfied where class size purely speculative). As with *O'Hanlon,* in which the 39-member size of the proposed class was not significantly smaller than the class proposed in this case, joinder of potential plaintiffs pursuant to RUSCC 20(a) is the more suitable procedure. *See* 7 Cl.Ct. at 206.

In any event, significant doubt exists as to whether the named plaintiffs could represent adequately the interests of the proposed class. Although they seek to litigate the question of whether they have been deprived unlawfully of an exemption for income generated by commercial operations on their possessory holdings, no consideration is given to the potential issues that could be raised by other members of the proposed class. Plaintiffs contend that the existence of such additional issues is speculative. However, a tax refund action in a class action context which seeks to litigate at least ten tax years of various litigants could breed additional issues not adequately represented by the named plaintiffs' complaint. Representation by others would be particularly detrimental to any unnamed plaintiffs since a decision on each tax year is *res judicata* as to any subsequent proceedings involving that year. *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Thus, as defendant argues, "[C]ertification followed by a judgment for the Government would cause each member of the class to forfeit all other [potential] claims for refund....", Def's Brief at 7–8, for the ten years at issue. As a consequence, provisional certification is not a satisfactory alternative.

## CONCLUSION

Under RUSCC 23 the judge is delegated the discretion in each case to determine "whether a class action may be maintained and under what terms and conditions." The various factors contributing to the disfavored status of the class action in this court, coupled with the difficulties it creates in tax refund litigation, counsel against certification of the proposed class action in this case.

Based on the foregoing, plaintiffs' motion for class action certification is denied.