**BAXTER HEALTHCARE CORP., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**MONDIAL INTERNATIONAL CORP., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Slip Op. 96–72.**

**Court Nos. 94–10–00650, 94–11–00682.**

United States Court of International Trade.

May 7, 1996.

Katten, Muchin & Zavis (Mark S. Zolno,
Kirk T. Hartley and Michael E. Roll), Chica-

go, IL, for plaintiffs Baxter Healthcare Corporation and Nestle, U.S.A., Inc.

Lynn S. Baker, Chicago, IL, for plaintiff The Nutrasweet Company.

Grunfeld, Desiderio, Lebowitz & Silverman (Steven P. Florsheim and Erik D. Smithweiss), New York City, for plaintiff Mondial International Corporation.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jeanne E. Davidson and Todd M. Hughes), Richard McManus, Office of the Chief Counsel, United States Customs Service, of counsel, Washington, DC, for defendant.

The following filed briefs on behalf of interested parties:

Baker & McKenzie (Kevin M. O'Brien and Teresa A. Gleason), Washington, DC, for Minnesota Mining and Manufacturing Company.

Burlingham Underwood L.L.P. (Robert J. Zapf), New York City, for Brunswick Corp., et al.

Donelan, Cleary, Wood & Maser, P.C. (Nicholas J. DiMichael and Paul A. Lenzini), Washington, DC, for Nabisco, Inc., et al.

Condon & Forsyth (Timothy J. Lynes, David G. Schryver and Thomas J. Whalen), Washington, DC, for Eaton Corporation, et al.

Coudert Brothers (Steven H. Becker, Charles H. Critchlow and Claire R. Kelly), New York City, for Texaco Refining and Marketing Inc., et al.

Rode & Qualey (Patrick D. Gill, John S. Rode, Michael S. O'Rourke and R. Brian Burke), New York City, for General Chemical Corporation, et al.

### OPINION

RESTANI, Judge:

Before the court are plaintiffs' motions for class certification.[1] The plaintiff class would comprise all persons who have paid harbor maintenance taxes under 26 U.S.C. § 4461 (1988 & Supp. V 1993) (the "Act") in connection with exportation of commercial cargo.[2]

### BACKGROUND

More than one thousand cases are now pending before the court asserting the unconstitutionality of the Act. Pursuant to a case management plan, all such actions are stayed, except for a test case which was decided by a three-judge panel of this court, *United States Shoe Corp. v. United States*, 907 F.Supp. 408 (Ct. Int'l Trade 1995). In *U.S. Shoe Corp.*, the court found the Act unconstitutional as a tax upon exports prohibited by the Export Clause of the United States Constitution. U.S. Const. art I, § 9, cl. 5. A subsequent judgment enjoined enforcement of the act and awarded monetary damages. *U.S. Shoe Corp. v. United States*, 924 F.Supp. 1191 (Ct. Int'l Trade 1995), *appeal docketed*, No. 96–1210 (Fed.Cir. Feb. 14, 1996). A stay of enforcement of the judgment pending appeal was granted in *U.S. Shoe Corp. v. United States*, 924 F.Supp. 1191 (Ct. Int'l Trade 1995). At least one similar action is pending in the United States District Court for the District of Maryland, which is also stayed pending the appeal of *U.S. Shoe Corp. American Ass'n of Exporters and Importers, Inc. v. Bentson*, No. 94–CV–1839 (D.Md. filed July 1, 1994) (stay order issued Nov. 20, 1995). In addition, approximately twenty cases are pending in the United States Court of Federal Claims, the majority of which are stayed. *See, e.g., E.I. DuPont de Nemours, Inc. v. United States*, NO. 96–33 (Ct.Fed.Cl. filed Jan. 25, 1996) (stay order pending appeal of *U.S. Shoe Corp.* granted Mar. 29, 1996). Individual claims are purported to range from less than one hundred dollars to hundreds of thousands of dollars. The number of potential claimants may be as high as one hundred thousand.

---

1. The arguments are virtually identical in both captioned cases, although the description of the class differs.

2. Mondial also seeks to represent the class of persons who are liable for such taxes and persons with claims relating to the same tax on passenger services.

## DISCUSSION

As a threshold matter, the court must decide whether to rule now on the motion for class certification. USCIT Rule 23(c)(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Given the controversy surrounding the applicable statute of limitations, see infra note 9, there may be some advantage to postponement because of the tolling effect of these actions.[3] The United States maintains, however, that, contrary to the court's opinion in *U.S. Shoe Corp.*, mandatory administrative procedures apply. See infra note 8. There is no assurance that these suits will toll time limits for administrative action, if it is required. This particular uncertainty weighs in favor of a prompt decision.

Next, following entry of judgment in *U.S. Shoe Corp.*, 924 F.Supp. 1191, the court ruled that interest runs from date of payment rather than date of judgment. *U.S. Shoe Corp. v. United States*, Slip Op. 96–32, 1996 WL 61643 (Ct. Int'l Trade Feb. 7, 1996). The court adopts that decision for purposes of these actions. The interest issue, however, like many issues in this case, is one of first impression. While the uncertainty caused by this circumstance is not enough to outweigh other considerations so as to lift the stays while the test case is resolved on appeal, it does influence the "[a]s soon as practicable" decision reached by the court. See USCIT Rule 23(c)(1). In sum, as there is no con-

vincing reason to delay, it is "practicable" to decide the class certification issue now.

The court finds that the basic prerequisites to a class action as set forth in USCIT Rule 23(a) are met.[4] First, the potential class members are so numerous that joinder of all members is impracticable. Second, there are questions of law or fact common to the class in that basic shared issues of jurisdiction, constitutionality, statute of limitations and liability for interest exist. Third, the court does not perceive its previous decisions in *U.S. Shoe Corp.* as removing the basic legal issues from the determination of typicality. Differences in claims for relief do not destroy typicality if the constitutional and other legal claims raised by the representative parties, and common to the class members, predominate. See, e.g., *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1276 (Ct.Cl.1972). Fourth, the named plaintiffs and their counsel are fully capable of fairly and adequately protecting the interests of the class. Representative plaintiffs' claims are substantial; no conflicts appear; and counsel are experienced. The real point of debate is whether, as a discretionary matter, a class action should be maintained under USCIT Rule 23(b).

Given the pending appeal before the Federal Circuit, and the stays outstanding, it is unlikely that conflicting decisions could arise. There is also no limited fund problem. Thus, maintenance of a class action under Rule 23(b)(1) is likely inappropriate. Although attempts have been made to

---

**3.** The Court of Appeals for the Federal Circuit appears to recognize that *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552–53, 94 S.Ct. 756, 765–66, 38 L.Ed.2d 713 (1974) (holding statute of limitations tolled while trial court considers class certification), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983) (same), apply to suits against the United States. See *Turner v. Merit Sys. Protection Bd.*, 806 F.2d 241, 245 (Fed.Cir.1986); see also *Barbieri v. United States*, 15 Cl.Ct. 747 (1988) (holding that commencement of class action suit against Government in Claims Court tolled running of statute of limitations for all potential class members).

**4.** USCIT Rule 23 is essentially the same as Fed. R.Civ.P. 23. This court and the Federal Circuit,

however, have not spoken frequently on the meaning of Fed.R.Civ.P. 23. Thus, the court has attempted to confine its analysis to the words of the Rule, rather than the case law of other courts.

USCIT Rule 23(a), setting forth the prerequisites to a class action, reads as follows:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

maintain these actions as Rule 23(b)(2) injunctive or declaratory relief actions, the court finds maintenance thereunder inappropriate. This court has already granted injunctive and declaratory relief against the United States in *U.S. Shoe Corp.*, 924 F.Supp. at 1191. The United States is presumed to act regularly and in accordance with law. *See Hoffman v. United States*, 894 F.2d 380, 384 (Fed.Cir.1990) (public officials are presumed to discharge their duties correctly, lawfully, and in good faith). The court has little doubt that the United States will cease to collect this tax in accordance with the court's decision and make refund to the extent required by law, if that decision is sustained on appeal. The court resists the notion that it should certify a Rule 23(b)(2) all-inclusive, non-opt out class under the guise that it could "enjoin the United States to make refunds." At this point this matter is predominantly an action for monetary relief. As such, maintenance of the class action is most appropriately analyzed under Rule 23(b)(3).[5]

■ Thus, the court must address the Rule 23(b)(3) factors of whether common issues of law and fact, as a practical matter, predominate over questions affecting individual members, and whether other methods are superior for the fair and efficient adjudication of the controversy. The issue of predominance is not determinative here. Important issues of law do exist, but they have largely been determined or will be determined in another action. Numerous *amici* are participating in the appeal of *U.S. Shoe Corp.* Thus, it is unlikely that novel arguments would be made in other cases that could alter the outcome. Therefore, while common issues do exist, in this case the court's function would likely involve overseeing resolution of individual claims for monetary relief. This may involve, however, common issues related to discovery, which are better resolved jointly.

The crucial analysis resolves around the issue of superiority. The first subfactor pertinent to this finding is the interest of members of the putative class in controlling their own litigation. USCIT Rule 23(b)(3)(A). It is clear that some of the largest claimants will opt out of the class.[6] The court has no doubt, however, that many of the more numerous, smaller claimants have no interest in "controlling," or even maintaining, individual actions.

The next subfactor is the extent or nature of existing litigation by or against members of the class. USCIT Rule 23(b)(3)(B). As indicated, suits are ongoing and the test case has progressed to the appellate stage. This maturing litigation will provide the basis for resolving all of the filed claims.

The third subfactor is the desirability of concentrating the litigation in one forum. USCIT Rule 23(b)(3)(C). The court has already determined, and almost all the parties agree, that Congress has already concentrated the litigation in this court, 26 U.S.C. § 4462(f)(2) (1988), and the chief judge has further concentrated it, with one exception,[7] before this one judge. Class action is not necessary to accomplish this result.

The final factor involves difficulties of management of a class action. USCIT Rule 23(b)(3)(D). Whether the court certifies a class, or not, procedures will be devised to

---

5. A class action, satisfying the prerequisites of USCIT Rule 23(a), may be maintained under USCIT Rule 23(b)(3) if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of

the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

6. In a class action maintained under USCIT Rule 23(b)(3), potential class members will be excluded from the class action if request is made by a specified date. USCIT Rule 23(c)(2).

7. Pursuant to an order dated February 24, 1995, *Carnival Cruise Lines, Inc. v. United States*, Consol.Ct. No. 93-10-00691, was reassigned from the three-judge panel to Judge Musgrave.

resolve discovery and recovery issues on a consolidated basis. If a class is certified, even more claims could come forth. On the other hand, if the class is not certified more suits might be filed, but attorneys would likely file some claims jointly as they have to date. In any case, sums cannot be paid out without appropriate documentation. The claims resolution process will be cumbersome, but manageable, whether or not a class is certified.

This piecemeal examination of US-CIT Rule 23 does not provide a clear answer on the issue of certification. The issue is perhaps best resolved here on a broader-based consideration of Rule 23. Is utilization of Rule 23 to be favored simply because it is an avenue of relief for taxpayers who most likely cannot as a practical matter pursue separate court actions? The United States Claims Court (now United States Court of Federal Claims) has opined that there was, at least, an appearance problem in encouraging potential litigants to come forward with claims to be litigated before it. *Saunooke v. United States*, 8 Cl.Ct. 327, 330 (1985) (citing *Cooke v. United States*, 1 Cl.Ct. 695, 698 (1983)). The Court of Claims (predecessor to the Federal Circuit) did not seem to share this view. *See Quinault*, 453 F.2d 1272 (certifying an opt-in class); *Crone v. United States*, 210 Ct.Cl. 499, 538 F.2d 875, 885 (1976) (distinguishing *Quinault* in which claims were "so small that it is doubtful that they would be [otherwise] pursued"), *modified on reh'g on other grounds*, 210 Ct.Cl. 748, 748 (1976). The *Saunooke* court, however, also rested its decision to deny class

certification on the mandatory tax refund procedures in place. 8 Cl.Ct. at 330–31. This case is distinguishable on both grounds. First, the Claims Court (renamed the Court of Federal Claims) lacks equity jurisdiction and uses only opt in procedures. *See Barbieri*, 15 Cl.Ct. at 749. Second, the court has found that there is no mandatory statutory refund procedure in place for administrative recovery of the taxes at issue here.[8]

Thus, the question remains—should the court provide a less onerous procedure for persons who are not interested in pursuing their claims through whatever administrative procedures now exist or through individual litigation, the cost of which procedure will be borne by the taxpayers? Or should the court restrict itself to resolving the claims brought before it and leave to Congress, the elected representative institution, to decide whether to fund a new procedure?

This is not a case involving a private wrongdoer where, despite the burden, there may be a reason to use Rule 23 to force disgorgement of ill-gotten sums in order to police behavior. This tax was exacted pursuant to a statute. The tax as structured is unconstitutional, but anyone who wishes to recover the tax has the opportunity to seek its recovery in court through procedures established by Congress for that purpose. Due process was and is available, and is being used by numerous claimants.

Furthermore, disgorgement of the tax through a class action may not be as easily accomplished as plaintiffs maintain. Plain-

---

**8.** In *U.S. Shoe Corp.*, certain *amici* alleged that protest of a denied refund claim could lead to 28 U.S.C. § 1581(a) (1988 & Supp. V 1993) jurisdiction in this case. The court rejected this avenue. *U.S. Shoe Corp.*, 907 F.Supp. at 421; *see also id.* at 422–23 (Musgrave, J., concurring). Apart from Customs' inability to provide relief on the constitutional challenge, Congress specified neither a mandatory administrative refund procedure nor any time limits for requesting a refund, for acting on the request or for protesting denial of such a request. Statutory constructions giving one party control over the deadline for filing suit are disfavored. *See United States v. Commodities Export Co.*, 972 F.2d 1266, 1271 (Fed.Cir.1992) (self-imposed demand obligation did not toll statute of limitations), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993).

The court notes that the government believes it has a protest procedure in place to protect these claims, wherein parties are required to protest the acceptance of tax payments. While the court did not find the procedure adequate as a route to jurisdiction in this court, it is available, at least temporarily, as a way to request relief from the government. Baxter's counsel has indicated the "protests" are no longer being automatically denied, rather the government is not taking action pending the outcome of the appeal. *But see infra* note 9 (discussion of statute of limitations). Non-mandatory administrative procedures do not toll the statute of limitations. *United States v. Ataka Am., Inc.*, 17 CIT 598, 605, 826 F.Supp. 495, 501–02 (1993).

tiffs believe notice problems might be lessened because of government records. There is an issue, however, as to just how complete the government's records are and it is disputed that the government can easily produce a list of payers and the amounts of payment. Certainly the publicity about this action has been broad enough so that claimants know that relief is available if they take action.[9] As indicated, whether certification occurs or not parties must gather documentation so that it may be presented to the court.

The only factor which points in favor of certification in this court is the proportionally heavier burden on the small claimant. Given that the other factors do not favor certification, in this circumstance Congress should decide whether to create a special procedure to refund small amounts to individuals who choose not to sue or cannot rely on uncertain administrative relief. Under the circumstances the court declines to use the class action device to exact expenditure by the United States for this purpose. For purposes of litigation, the test case procedure, already well along, is adequate.

The court also considered whether it should certify an issues class under Rule 23(c)(4).[10] See Central Wesleyan College v. W.R. Grace & Co., 6 F.3d 177, 184 (4th Cir.1993) (in asbestos litigation court conditionally certified eight common fact issues relating to defendant's conduct under Fed. R.Civ.P. 23(c)(4)). For this case, Rule 23(c)(4) does not provide a superior method of adjudication. The common issues are not ones of fact. For adjudication of the legal issues affecting the federal defendant the test case procedure is adequate. The motions for class certification are denied.

**9.** The publicity, however, has been confusing on the statute of limitations issue. Under the court's view, jurisdiction lies under 28 U.S.C. § 1581(i), which bears a two-year limitations statute that is unrelated to any administrative claims that are pending. 28 U.S.C. § 2636(i) (1994); see also supra note 8. Because, inter alia, the court could not identify a "decision" within the meaning of 19 U.S.C. § 1514 (1988), 28 U.S.C. § 1581(a) jurisdiction, which depends on denial of a protest of a § 1514 decision, was not found. U.S. Shoe Corp., 907 F.Supp. at 420–21. This issue is pending appeal. Some parties have proceeded on both jurisdictional theories, that is, immediate right to sue upon payment under § 1581(i) and suit following mandatory administrative procedures under § 1581(a).

**10.** USCIT Rule 23(c)(4) reads as follows:

When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.