Slip Op. 04-150

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | | |
|---|---|---|
| Gilda Industries, Inc., | : | |
| Plaintiff, | : | |
| | : | **Consol. Court. No. 03-00203** |
| v. | : | **Before: Barzilay, Judge** |
| United States, | : | |
| Defendant. | : | |
| _____ | : | |

[Plaintiff's motions denied; Defendant's Motion to Dismiss Granted.]

Decided: December 1, 2004

(*Peter S. Herrick*) for Plaintiff.

*Peter D. Keisler,* Assistant Attorney General; (*David M. Cohen*), Director; (*Jeanne E. Davidson*), Deputy Director, (*David S. Silverbrand*), Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; *William Busis*, Office of General Counsel, Executive Office of the President, Office of the United States Trade Representative, of counsel; *Yelena Slepak*, International Trade Litigation, Bureau of Customs and Border Protection, of counsel, for Defendant.

## OPINION

**BARZILAY, JUDGE:**

Plaintiff Gilda Industries Incorporated ("Gilda") has filed several motions that are at issue in this proceeding. They include a motion for class certification, motion for writ of mandamus and declaratory relief, motion to join the United States Trade Representative and Commissioner of Customs and Border Protection as defendants, motion to supplement its Response to

Defendant's Motion to Dismiss, and finally, motion to amend its amended complaint.[1]  Also

before the court are Defendant United States' ("Government" or "United States Trade

Representative" or "USTR") motions to dismiss both of Plaintiff's complaints (original and

amended) for failure to state a claim upon which relief can be granted.   Plaintiff has

subsequently abandoned its motion for Writ of Mandamus with respect to all liquidated entries,

but seeks mandamus with respect to prospective entries on the basis that the retaliation list has

terminated by operation of law.  *See Pl.'s Opp. to Deft.'s Mot. to Dismiss*, at 15; *Oral Argument

Tr.*, 20 – 21.  Because the court finds that the retaliation list has not terminated by operation of

law, as discussed *infra*, Plaintiff's arguments seeking Writ of Mandamus need not be addressed.

Gilda, an importer of toasted breads from Spain, filed suit to challenge the USTR's

compilation and administration of a "retaliatory list," created pursuant to both section 301 of the

Trade Act of 1974, (19 U.S.C. § 2411 (2004)), and a WTO Appellate Body decision authorizing

retaliatory action against the European Community.  Gilda claims that toasted breads – a product

it imports – should not have been included on the retaliation list and that the USTR failed to

rotate products off  the list as required by the relevant statute.  Thus, Gilda seeks to have its

products removed from the retaliatory list and also to have those entries reliquidated that were

made after the date it claims its products should have been rotated off the list.  Gilda also seeks a

refund of the 100% duties it has already paid, with interest.

In its amended complaint, Gilda adds the Administrative Procedure Act, 5 U.S.C. § 702

---

[1] Plaintiff's motion to supplement the record is granted and motion to amend its amended complaint is denied.  All other motions not specifically addressed in this opinion are hereby denied as moot or subsumed in the judgment.

("APA") as a basis for its claim and argues that the USTR's failure to hold public hearings on modification of the retaliation list constitutes a violation of its procedural due process rights under the Fifth Amendment to the Constitution. As discussed below, the court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i) (2000). For the following reasons, the Government's motion to dismiss is granted and Gilda's motions for writ of mandamus and declaratory relief, class certification, and joinder are all denied.

## I. Background

This case stems from a dispute between the European Community ("EC") and the United States resulting from the former's ban on the importation of hormone treated animals and meat. A World Trade Organization ("WTO") Dispute Settlement Body ("DSB") panel determined that the EC hormone ban is not based upon scientific evidence, a risk assessment, or relevant international standards and is therefore contrary to the EC's obligations under the Agreement on the Application of Sanitary and Phytosanitary Measures ("SPS Agreement"). This determination was affirmed by the WTO Appellate Body. Pursuant to the EC's failure to subsequently implement the DSB recommendations by the May 13, 1999 deadline, the USTR published *Implementation of WTO Recommendations Concerning EC Measures Concerning Meat and Meat Products (Hormones)* ("Hormones Implementation") in the Federal Register. 64 Fed. Reg. 14,486 (Mar. 25, 1999).

The March 25th Federal Register notice published a preliminary list of specified EC products, announced that the United States would suspend tariff concessions on these products,

and asked for public comment.[2]  Gilda did not submit comments or take part in these

proceedings.  On April 19, 1999, the USTR conducted a public hearing to receive testimony on

the preliminary list.  Again, although the preliminary list included the HTSUS subheading

classifying toasted breads, Gilda did not take part in this hearing or otherwise challenge the

inclusion of this HTSUS subheading on the retaliatory list.  *See Pl.'s Opp. to Deft.'s Mot. to

Dismiss*, at 15.

On July 27, 1999, the USTR published *Implementation of WTO Recommendations

Concerning EC Measures Concerning Meat and Meat Products (Hormones)* in the Federal

---

[2] The Federal Register notice stated the following:
> The USTR requests comments on the types of concessions that may be appropriate for suspension pursuant to Article 22 of the DSU if the EC does not implement the [WTO Dispute Settlement Body] recommendations concerning the hormone ban . . . The USTR proposes that the imposition of 100 percent ad valorem duties on selected products of the EC is an appropriate action and that the products be drawn from the list of products set forth in the Annex to this notice. . . .
>
> Section 306(c) of the Trade Act provides that the USTR shall allow an opportunity for the presentation of views by interested persons prior to the issuance of a determination pursuant to section 306(b).  The USTR invites interested persons to: (1) provide written comments on the proposed suspension of concessions; and (2) to present written and oral testimony and rebuttal briefs in the context of a public hearing.  Written comments and written oral testimony may address: the appropriateness of imposing increased duties on the products listed in the Annex to this notice; the levels at which U.S. customs duties should be set for particular items . . . .
>
> Written comments, written testimony, and rebuttal briefs will be placed in a file open to public inspection . . . .

64 Fed. Reg. 14,486 (March 25, 1999).

Register and raised duties on EC products pursuant to section 301 of the Trade Act of 1974.[3]

Included in the Annex described in the *Hormones* list was HTSUS subheading 9903.02.35 which

includes "[r]usks, toasted bread and similar products (provided for in subheading 1905.40)."

Therefore, in accordance with the Hormones Implementation, Gilda's products were subjected to

100% duties.  To this date, the USTR has not modified the retaliation list and continues to

negotiate with the EC in an effort to resolve the Hormones dispute.  *Deft.'s Mot. to Dismiss*, at

13.

## II.  Jurisdiction

Plaintiff originally brought its complaint and claim for class certification under 28 U.S.C.

§ 1581(a), its protests having been denied by Customs.  During a conference call with the parties,

the court noted that its jurisdiction under section 1581(a) is limited to those entries for which all

statutory requirements have been satisfied.  The court also discussed the particular difficulties

---

[3] Section 301 provides for the following:
(a) Mandatory Action.
(1) If the United States Trade Representative determines under section 403(a)(1) [19
U.S.C. § 2414(a)(1)] that –
> (A) the rights of the United States under any trade agreement are being denied; or
> (B) an act, policy, or practice of a foreign country –
>> (i) violates, or is inconsistent with, the provisions of, or otherwise denies
>> benefits to the United States under any trade agreement, or
>> (ii) is unjustifiable and burdens or restricts United States commerce, the
>> Trade Representative shall take action authorized in subsection (c), subject
>> to the specific direction, if any, of the President regarding any such action
>> . . . to enforce such rights or to obtain the elimination of such act, policy,
>> or practice. . . .
19 U.S.C. § 2411 (2004).

with maintaining a class action under the unique jurisdictional structure of section 1581(a).

Subsequently, Plaintiff moved to amend its complaint, invoking the Court's residual jurisdiction,

28 U.S.C. § 1581(i) in the alternative.   Because jurisdiction under section 1581(a) is limited to

only those entries that have been validly protested, denied and duties paid, it does not allow the

court to address the forward-looking relief that Plaintiff seeks.  Thus, the court will examine its

jurisdiction under section 1581(i).

Section 1581(i) confers upon this court exclusive jurisdiction over any civil action

commenced against the United States, its agencies, or its officers that arises out of any law of the

United States providing for duties on the importation of merchandise for reasons other than the

raising of revenue.  28 U.S.C. § 1581(i)(2).  This court, however, may exercise its jurisdiction

pursuant to section 1581(i) only when the case directly relates to the proper administration and

enforcement of an international trade law *and* no other basis for jurisdiction is available or the

basis that is available will yield a remedy which is manifestly inadequate.  *Nat'l Corn Growers*

*Ass'n v. Baker*, 840 F. 2d 1547, 1555 (Fed. Cir. 1987) (emphasis added); *see also Miller & Co. v.*

*United States*, 824 F. 2d 961, 963 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 1041 (1988).

Therefore, the court must determine whether a basis for (i) jurisdiction exists.  That is, whether

relief under any other jurisdictional provision would be manifestly inadequate.  In the case at

hand, Gilda seeks to challenge the USTR's inclusion of the HTSUS subheading providing for

toasted breads on the retaliation list.  It also seeks to compel the USTR to remove this

subheading from the list, and to have its duties refunded – all of which are unrelated to the

liquidation of its entries by the Bureau of Customs and Border Protection and the denied protests.

Thus, because Plaintiff seeks to challenge the USTR's imposition of duties pursuant to section 301 of the Trade Act for reasons related to fostering a change in EC policy, section 1581(i)(2) applies. Furthermore, because any remedy available under section 1581(a) would be directed at Customs and not the USTR, the relief plaintiff is seeking – that it be removed from the retaliation list and be reimbursed 100% duties – cannot be obtained under this section. Because any remedy under section 1581(a) would therefore be manifestly inadequate in obtaining the relief sought, and because no other jurisdictional provision is applicable, this court has jurisdiction to hear Plaintiff's case pursuant to 28 U.S.C. § 1581(i).

Plaintiff has also moved for class certification, purporting to represent "others similarly situated."[4] USCIT Rule 23(c) provides that as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. Rule 23(a) sets out four prerequisites to class action. First, the class must be so numerous that joinder of all members is impracticable. Second, there must be questions of law or fact common to the class. Third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and finally, the representative parties must fairly and adequately protect the interests of the class. Because no other class members can be identified the court cannot determine whether joinder is practicable; there are no identifiable common questions of law or fact; and it is unclear whether Plaintiff's claims and defenses are

_____

[4] Apparently, Plaintiff refers to other importers of products currently being subjected to 100% duties as a result of being included on the *Hormones* list. None has come forward or has been identified to the court. Furthermore, both the court and Defendant are unaware of any other pending litigation related to the *Hormones* list.

typical of a putative class. It is therefore impossible to determine whether the requirements of class certification can be met. Even assuming that Plaintiff's claims to the contrary are true and a class of plaintiffs does exist, as a discretionary matter a class action should not be maintained. *See, e.g. Baxter Healthcare Corp. v. United States*, 20 CIT 552, 925 F. Supp. 794 (1996). As Plaintiff has been unable to point to any other pending litigation concerning this issue, conflicting decisions are not a concern. There is also no limited fund problem, as the defendant is not a private litigant. In fact, none of the criteria listed in Rule 23(b) have been met. Plaintiff's motion for class certification is therefore denied. *See U.S. Vinadium Corp. v. United States*, 22 CIT 852 (1998) (citing *Baxter*, 925 F. Supp. at 794).

### III.    Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). The movant bears the burden of demonstrating that there is no such issue. *See Precision Specialty Metals, Inc. v. United States*, 25 CIT __, 182 F. Supp. 2d 1314, 1318 (2001) (citing *United States v. F.H. Fenderson, Inc.*, 10 CIT 758, 760 (1986)). Here the parties do not dispute any material facts and thus, summary judgment is appropriate. *See Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 26 CIT __, 239 F. Supp. 2d 1367, 1369 (2002).

Defendant, on the other hand, is entitled to dismissal under USCIT Rule 12(b)(6) where, after accepting Plaintiff's factual allegations made in its complaint and drawing all inferences in

favor of Plaintiff, it appears beyond doubt that no set of facts can be proven that would entitle Plaintiff to relief. *See Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 215 (Fed. Cir. 1993); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1565 (Fed. Cir. 1988) (citations omitted). In order to determine the sufficiency of a claim, consideration is limited to the facts stated on the face of the complaint, or incorporated in the complaint by reference. *Kemet Electronics Corp. v. Barshefsky*, 976 F. Supp. 1012, 1027 (1997) (citations omitted).

## IV. Scope of Review

The court recognizes its very limited scope of review in cases implicating United States foreign policy – a matter left to the discretion of the President. *See United States Cane Sugar Refiners' Ass'n v. Block*, 683 F.2d 399, 404 (CCPA 1982) ("[L]et the President's action be authorized, and his action be within the authorizing provisions of the law he cites, and the role of the judiciary is at an end."); *see also American Ass'n of Exporters and Importers v. United States*, 751 F.2d 1239, 1247 (Fed. Cir. 1985) (stating that congressional delegations to the President in the international field are normally given a broad construction) (citing *United States v. George S. Bush & Co.*, 310 U.S. 371, 379-80 (1940); *Block*, 683 F.2d at 399, 404; *Aimcee Wholesale Corp. v. United States*, 468 F.2d 202, 206 (CCPA 1972)). Furthermore, the USTR, a member of the Executive Office of the President, acts at the direction of the President as his negotiating arm in international trade matters. *See* 19 U.S.C. § 2171. Thus, for a court to intervene there must be "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985). Furthermore, "the President's findings of fact and the motivations for his

action are not subject to review." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 795 (Fed. Cir. 1984). Mindful of these restraints, the court will consider Plaintiff's claims for relief.

## V.      Discussion

### A.      Inclusion on the Retaliatory List

Gilda argues that "section 407 of the Trade and Development Act of 2000 ("TDA") explicitly states that the products on the retaliatory list must be goods of industries that are affected by the European Communities' non-compliance in the beef hormone dispute." Because its products are not affected by the beef exporting industry, Gilda further argues that the inclusion of toasted breads on the retaliatory list was contrary to law. Gilda simply misreads the statute. The TDA modified 19 U.S.C. § 2416 in a number of ways, one of which was to require reciprocal goods on the retaliation list. This statute merely states that the list must *include* reciprocal goods – not that it is limited to reciprocal goods. Specifically, it states

> (F) Requirement to *include* reciprocal goods on retaliation list.
> The Trade Representative shall *include* on the retaliation list, and on any revised lists, reciprocal goods of the industries affected by the failure of the foreign country or countries to implement the recommendation made pursuant to a dispute settlement proceeding under the World Trade Organization, except in cases where existing retaliation and its corresponding preliminary retaliation list do not already meet this requirement.

19 U.S.C. § 2416(b)(2)(F) (emphasis added). The USTR has included reciprocal goods on the retaliation list, and it is not limited to including solely these products. Therefore, Gilda's claim that its products were unlawfully included on the retaliation list fails.

### B.      Termination of the Retaliatory List

Plaintiff repeatedly asserts that pursuant to 19 U.S.C. § 2417(c)(1)(B), the retaliation list

expired on July 29, 2003. This provision provides for the automatic termination of an action

taken under section 301 where no request has been made for the continuation of the action by a

representative of the domestic industry who was the intended beneficiary of the action.

Specifically, it provides

> (c) Review of necessity.
> (1) If--
>> (A) a particular action has been taken under section 301 during any
>> 4-year period, and
>> (B) neither the petitioner nor any representative of the domestic
>> industry which benefits from such action has submitted to the Trade
>> Representative during the last 60 days of such 4-year period a written
>> request for the continuation of such action, such action shall
>> terminate at the close of such 4-year period.

19 U.S.C. § 2417. The Government has produced two such requests from the domestic industry,

one from the U.S. Meat Export Federation, received June 2, 2003 and another from the National

Cattlemen's Beef Association, received July 21, 2003. *See Deft.'s Resp. in Opp. to Pl.'s Mot. for

Writ of Mandamus and Declaratory Relief, Ex.* 2, 4.[5] Even in light of the production of such

evidence, Plaintiff asserts that "in reality, there is no domestic industry which has benefitted from

the imposition of the 100% duties." *Pl.'s Reply to Deft.'s Resp. in Opp. to Pl.'s Mot. for Writ of

Mandamus and Declaratory Relief*, at 3. Based on its unsupported presumption that "these

duties have been collected by Customs and deposited into the general treasury" and cursory

observation that hormone treated beef from the United States is still barred from entry into the

---

[5] A third request was submitted by the American Meat Institute, but was received May 29, 2003 - one day before the commencement of the 60-day time window for written continuation requests.

EC, Plaintiff argues that the domestic industry has not benefitted from the USTR's action.

Plaintiff therefore seems to suggest that the court should find that the letters received in support

of continuing the retaliatory action do not satisfy the requirements of section 2417. Plaintiff's

argument is a *non sequitur*. Nowhere in the statute is there a requirement that importers

themselves receive direct payments from collected duties or any other direct benefits in order to

qualify as "beneficiaries." Furthermore, the court will not second-guess the USTR's

determination of whether the domestic industry respondents are in fact "benefitting" from the

retaliation action when the statute merely requires a written request from an industry

representative to continue the retaliation. To do so would be to encroach upon the foreign-policy

making powers of the executive branch. *See Florsheim,* 744 F.2d at 795.

Plaintiff, in a later brief, argues that while the domestic industry requests "seem to

indicate that the USTR did what it was required to do pursuant to section 2417(c)(2)," the list has

terminated because the USTR failed to comply with section 2417(c)(3). This latter section

directs the USTR to review the effectiveness of the retaliatory action in achieving its objectives

as well as the effects of the action on the United States economy. It states that

> (3) If a request is submitted to the Trade Representative under paragraph
> (1)(B) to continue taking a particular action under section 301, the Trade
> Representative shall conduct a review of--
> >  (A) the effectiveness in achieving the objectives of section 301 of--
> > >  (i) such action, and
> > >  (ii) other actions that could be taken (including actions against
> > >  other products or services), and
> >  (B) the effects of such actions on the United States economy,
> >  including consumers.

19 U.S.C. § 2417(c)(3). The USTR stated during oral argument that a study is being conducted

but that no final result has been reached. *Oral Argument Tr.*, at 45 – 46.  In any event, it does not

follow that where the requirements of section 2417(c)(3) are not fulfilled, the retaliation list

terminates pursuant to the automatic termination provision of section 2417(c)(1)(B).  The statute

directs that the section 301 action terminate after a four year period unless it is renewed by a

written request from the domestic industry, as discussed above.  Where there has been such a

request, the action will not terminate and the USTR is directed to conduct an investigation of the

effectiveness of the action and the effects of that action on the United States economy.  Thus,

because the domestic industry requested extension and, notwithstanding the fact that the USTR

has yet to hold a hearing on the effect and effectiveness of the measures, the list has not

terminated pursuant to section 2417(c).

C.      **Removal from the Retaliatory List**

Gilda also argues that the Trade and Development Act of 2000 amended section

2416(b)(2) in order to require that the USTR periodically revise retaliation lists.[6]  The statute, as

amended by the TDA, provides

> (B) Revision of retaliation list and action.
> (i) Except as provided in clause (ii), in the event that the United States initiates
> a retaliation list or takes any other action described in section 301(c)(1)(A) or
> (B) against the goods of a foreign country or countries because of the failure of
> such country or countries to implement the recommendation made pursuant to a
> dispute settlement proceeding under the World Trade Organization, the Trade
> Representative shall periodically revise the list or action to affect other goods of
> the country or countries that have failed to implement the recommendation.
>      (ii) Exception.

---

[6] This provision is also referred to as the "Carousel provision" because it encourages
products to be rotated on and off of retaliation lists.

> The Trade Representative is not required to revise the retaliation list
> or the action described in clause (i) with respect to a country, if –
> (I) the Trade Representative determines that implementation of a
> recommendation made pursuant to a dispute settlement proceeding
> described in clause (i) by the country is imminent; or
> (II) the Trade Representative together with the petitioner involved in the
> initial investigation under this chapter (or if no petition was filed, the
> affected United States industry) agree that it is unnecessary to revise the
> retaliation list.
> (C) Schedule for revising list or action. The Trade Representative shall, 120
> days after the date the retaliation list or other section 301(a) action is first taken,
> and every 180 days thereafter, review the list or action taken and revise, in whole
> or in part, the list or action to affect other goods of the subject country or
> countries.

19 U.S.C. § 2416. Although over four years have passed since the TDA went into force, the

Government has yet to revise the *Hormones* retaliation list. Citing to the *Trade Policy Agenda*

*and 2002 Annual Report of the President of the United States on the Trade Agreements Program*,

the Government indicates that it continues to negotiate with the E.C. in an effort to resolve the

beef-hormones dispute. While there is no indication that the domestic beef industry agrees that it

is unnecessary to revise the retaliation list,[7] the USTR has invoked subsection (I) of the exception

to the requirement that the retaliation list be periodically revised. During oral argument, the

Government stated that "[i]n this case because the USTR believes that a solution with the

European Communities is imminent it has not implemented the Carousel provision." *Oral*

*Argument Tr.*, at 43. Plaintiff cites to these provisions and seeks a refund of the 100% duties it

_____

[7] To the contrary, the National Cattlemen's Beef Association states that "[they] continue
to believe that a 'carousel' mechanism of compensation would serve as a better tool" to resolve
the hormones dispute. *Deft.'s Resp. in Opp. to Pl.'s Pet. for Writ of Mandamus and Decl. Rel.*,
*Ex.* 4.

paid on three separate entries.  It is not, however, entitled to such relief under the statute.

Gilda argues that it would have challenged the 100% duties through the public comment proceedings had the USTR published a Federal Register notice every 180 days as required by the statute.  Because the USTR failed to do so, Gilda argues, it was impossible to challenge the maintenance of its products on the *Hormones* list.  Section 2416(b)(2) does not, however, provide for money damages or refund of duties as a consequence of the USTR's failure to either revise the list according to schedule or invoke one of the exceptions.  Furthermore, the statute merely requires the USTR to *revise* the retaliation list *in whole or in part*.  When revising, the USTR has complete discretion to retain any of the HTSUS subheadings already on the list.  Thus, even if the court were to compel the Government to revise the list, Gilda has no guarantee of relief.  At best, Gilda could hope for an opportunity to petition the USTR to remove the HSTUS subheading for toasted breads from the list, but is not entitled to refund of duties already paid.  Gilda refutes this notion by citing to *Swisher Int'l Inc. v. United States*, 205 F.3d 1358 (Fed. Cir. 2000).  Gilda's reliance on *Swisher*, however, is misplaced because that case dealt with refunds of illegally exacted taxes.  In the case at hand, the United States acted in accordance with the law when imposing 100% duties on Gilda's entries.  Gilda merely argues that the USTR violated the law by not revising the list every 180 days – an action that would not necessarily have removed toasted breads from the *Hormones* list.  Thus, because the court finds that the exception provided for in 19 U.S.C. § 2416(b)(2)(B)(ii)(I) applies, the USTR is not required to publish or revise the Hormones list under the current facts.  Additionally, because neither money damages nor refunds are available, Gilda's arguments both for removal from the *Hormones* list as well as for a refund

of the 100% duties it has paid must fail.

### D.        Due Process

Finally, Plaintiff claims that its procedural due process rights under the Fifth Amendment

to the Constitution of the United States were violated by the USTR's failure to revise the

*Hormones* list under the Carousel provision for over 42 months.  As a result of this failure to act,

Gilda argues, "[t]he USTR has failed to provide notice and an opportunity to be heard for the

Plaintiff's removal of their products from the Beef Hormone Retaliation List . . . ." *Pl.'s Opp. to*

*Deft.'s Mot. to Dismiss*, at 20.  Gilda cites to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532,

542 (1985), in support of the notion that the essential requirements of due process are notice and

an opportunity to respond, and argues that "under present rule of law, the only way the Plaintiffs

can have their products removed from the Beef Hormone Retaliation List is by publication of a

Federal Register notice by the USTR every 180 days and the opportunity to submit written

comments and/or attend a hearing. . . ." *Pl.'s Opp. to Deft.'s Mot. to Dismiss*, at 20.  It is clear,

however, that Gilda was afforded early and ample opportunity to challenge, question and

comment on the inclusion of the products it imports on the *Hormones* list, and to seek removal of

these products from that list. *See Implementation of WTO Recommendations Concerning EC –*

*Measures Concerning Meat and Meat Products* (*Hormones*), 64 Fed. Reg. 14,486 (Mar 25,

1999) (requesting comments on composition and implementation of retaliation list and giving

notice of public hearing to receive testimony on the preliminary list).  Gilda, by its own

admission, did not take advantage of these opportunities. *See  Pl.'s Opp. to Deft.'s Mot. to*

*Dismiss*, at 15 ("Gilda did not participate in the original comment period when the Beef

Hormone Retaliation List was established nor in the comment period for the first Federal Register notice regarding changes to be followed by the 'Carousel provision.'"). Gilda's constitutional due process rights have not, therefore, been violated by the USTR. To the contrary, Gilda was afforded due process prior to any potential deprivation that might have occurred. *See United States v. James Daniel Good Reap Prop.*, 510 U.S. 43, 48 (1993) ("[Supreme Court] precedents establish the general rule that individuals must receive notice and an opportunity to be heard *before* the Government deprives them of property." (emphasis added)); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."). The court also notes that the Supreme Court has held that the agency has discretion in determining when the hearing is to be held, only requiring that it take place prior to the "final order becoming effective." *Opp. Cotton Mills. v. Administrator*, 312 U.S. 126, 152, 153 (1941). In the case at hand, Plaintiff had a full and fair opportunity to be heard on the inclusion of HTSUS subheading 9903.02.35 on the *Hormones* retaliation list. Subsequent to this opportunity, the USTR is not required by the Constitution to provide additional process. Thus, Plaintiff's claim that it was deprived of its due process rights under the Fifth Amendment must fail.

## VI.   Conclusion

For the reasons stated above, Plaintiff's motion to supplement its response is granted; its motions for class certification, for writ of mandamus and declaratory relief, to join the United States Trade Representative and Commissioner of Customs and Border Protection as defendants and to amend its amended complaint are denied. Plaintiff is not entitled to summary judgment

on its due process claim.  Furthermore, Defendant's motions to dismiss both of Plaintiff's

complaints (original and amended) for failure to state a claim are granted.


Dated:
     December 1, 2004                 /s/ Judith M. Barzilay
     New York, New York              Judith M. Barzilay, Judge